## KERNOCHAN v. THE NEW-YORK BOWERY FIRE INSURANCE COMPANY.

A building was insured in the name of a mortgagee, for his own security and that of the mortgagor, the latter paying the premium. Notice of loss and preliminary proofs were served in the name of the mortgagor, the latter stating the above facts, describing the building and referring to the policy by its number, and embracing an affidavit of the mortgagee, verifying the statements. No objection being taken to the notice and proofs until after suit brought; *Held*, that the insurers could not object at the trial that they were not in the name of the insured.

Proof of a parol agreement that the mortgagee should keep the premises insured and the mortgagor pay the premiums, does not conflict with the .rule excluding parol evidence to vary or explain a written contract. The contract between the insurers and the mortgagee is unaffected by it.

Such evidence is material as showing the mortgagor entitled to have the avails of the policy, in case of loss, applied to the payment of his debt, and that therefore the insurers have no right of subrogation in respect to the mortgage.

Kernochan *v.* The New-York Bowery Fire Insurance Company.

Though the insurers had no notice of such an agreement, a policy to the mortgagee, in that character, insuring him against damage to the property insured, is an insurance of the property and not of the debt. The debt is only important as giving the mortgagee an insurable interest.

If, in any case, the insurer of a mortgagee is entitled, on payment of a loss, to an interest in the debt and security, it is a mere equity to be subrogated *pro tanto* to such rights as the insured himself has, in respect to the mortgage, after receiving payment of the loss. The equity does not arise from the contract of insurance, but from all the circumstances of the case.

The mortgagee is not bound to disclose the contract between himself and the mortgagor, as to the insurance, without inquiry on the subject by the insurers.

APPEAL from the Superior Court of New-York. The action was on a policy of fire insurance, made to the plaintiff as mortgagee.

The answer, among other things, denied notice and proof of loss, according to the condition of the policy, and alleged that the mortgage was ample security for what remained unpaid of the mortgage debt, wherefore the plaintiff was not injured by the fire.

On the trial before Mr. Justice WOODRUFF, in January, 1856, these facts were proved: The policy was on two buildings, and dated May 1, 1848, and the defendants thereby insured the plaintiff, "as mortgagee, against loss or damage by fire, to the amount of $6,000," agreeing to make good unto the insured, "all such loss or damage, not exceeding in amount the sum insured, as shall happen by fire to the property," during one year. Among the conditions of the policy were, "that property held in trust, or on commission, must be insured as such, otherwise the policy would not cover such property;" and "that persons sustaining loss or damage by fire, should forthwith give notice thereof in writing to the company," and as soon after as possible, furnish preliminary proofs of loss. The policy was renewed annually up to the 1st of May, 1854; the last renewal being on the 1st of May, 1853. On the 10th of December, 1853, one of the buildings was destroyed, and the other injured by fire, the extent of the damage being $3 492.

In 1848, the plaintiff sold the buildings and the lots on which they stood, to George F. Cooledge and William P. Cooledge, composing the firm of George F. Cooledge & Brother, and took back a bond and mortgage, dated May 1, 1848, for the whole amount of the purchase money, being $21,500. William P. Cooledge testified, that it was agreed with the plaintiff, at the time of the purchase, that the plaintiff should keep the premises insured, and that the witness and his brother should pay the premium; that they paid the premium at the time of the payment of the annual interest, up to and including May, 1853; and that the understanding was, the insurance was to be kept up for their benefit. Exception was taken by the defendant to the admission of evidence of this agreement, on the ground that there was no insurance clause in the mortgage, and that the defendant had no notice of the agreement.

It was proved by William Hibbard, the president of the defendant, that the plaintiff, prior to the present policy, as owner of the premises, had a policy from the defendant; that when he applied for this policy, he said he had sold the property, and wanted it insured to secure him; that he had received no money, and wanted to make his debt secure, and be insured as mortgagee. The witness further testified, that the defendant was not, prior to the fire, notified of the agreement between the plaintiff and the Cooledges, that the plaintiff should have the property insured for the benefit of the latter; and that when the last renewal was made, the witness stated the premium was too low, and insisted on an increase; the plaintiff refused to pay more, and said it was not worth more. After some conversation, the witness told him it might be worth a little less to insure him as mortgagee, but that the defendant would not insure the owner at that rate. The witness stated that no inquiry was made as to the amount due on the mortgage; that there was no stated rule of difference between insurances for owners and mortgagees; that the rate of premium for

insuring as mortgagee, and insuring the mortgagor, he assigning the policy to the mortgagee, was the same.

Several witnesses testified that the usual practice was for mortgagors to pay the premium when the policy was to the mortgagee, or to the mortgagor and assigned to him. This evidence of usage was received under an exception by the defendant.

The amount unpaid on the bond and mortgage May 1, 1853, was $15,500. The value of the lots, exclusive of the buildings, at that time, was about $21,000, and the Cooledges were solvent, exclusive of the lots.

The notice of loss to the defendant, was dated the 19th of December, 1853, and given in the name of George F. Cooledge & Brother, and it stated that the buildings were insured by the defendant. The preliminary proofs served were dated the fifth of January following, and were in the name of the Cooledges. Exceptions were taken by the defendant to allowing this evidence, because the notice and proofs were not by the person insured. These proofs stated the agreement between the Cooledges and the plaintiff; that the latter should keep the buildings insured for the benefit of the former, and hold the policy as further security; that they had paid to him the premiums; and contained a description of the property and the number of the policy. The affidavit of the plaintiff verifying, on information and belief, the affidavit of the Cooledges, was annexed.

Two days after the action was commenced, the defendant offered the plaintiff to pay him the amount of the damage to the buildings and take an assignment of a portion of the bond and mortgage equal to that sum; or to pay the whole amount of the bond and mortgage, and take an assignment of them. The plaintiff was willing to receive the amount of the damage and costs, but refused an assignment, in whole or in part, by way of subrogation or otherwise.

When the plaintiff rested, and also at the close of the trial, the defendant moved for a nonsuit, because the plain-

tiff had not proved notice of loss to the defendant, or served preliminary proofs of loss, signed by the plaintiff; which motion was denied, and the defendant excepted.

The judge charged the jury, in substance, that if the insurance was made for the benefit of the Cooledges as well as the plaintiff, under such circumstances as to be valid for the Cooledges, they were parties insured in such a sense that they might give the notice, and furnish proofs of loss; otherwise not, and the plaintiff was not entitled to recover.

That if the real intent of the parties, the defendant as well as the plaintiff, was, that the insurance should be for the benefit of both mortgagor and mortgagee, and this was understood by the defendant, in making the insurance, the plaintiff was entitled to recover.

That if the defendant was not aware of the agreement between the plaintiff and the Cooledges, in respect to insurance, or that the plaintiff was effecting the insurance for the benefit of the latter, they paying the premiums, the jury would inquire whether, if the facts had been known, the defendant would have refused to insure, or made a difference in the rates of insurance; if not, the plaintiff might nevertheless recover; but if they would have refused, or prescribed different rates, the plaintiff could not recover.

That the evidence of usage had been received, not to vary the terms of the contract, but as affording some light upon the question whether the defendant would, if they had known the agreement for insurance between the plaintiff and the Cooledges, have made the insurance.

To this charge, the defendant took various exceptions.

The jury rendered a verdict in favor of the plaintiff for $3,917.12.

Judgment having been entered, and affirmed on appeal to the general term, the defendant appealed to this court.

*A. Thompson*, for the appellant.

*Daniel Lord*, for the respondent.

Kernochan *v.* The New-York Bowery Fire Insurance Company.

STRONG, J.  The notice of loss in this case, in the name of George F. Cooledge & Brother, stated that the buildings were insured by the defendants, and specified their numbers, and the streets on which they were situate, according to the policy.  And the preliminary proofs of loss, in the names of the Cooledges, accompanied with the affidavit of the plaintiff, in addition to those facts, among others, gave the number of the policy.  It does not appear that when either was served, or afterwards, before the trial of the action, objection was made to the notice or proofs that they were not by the plaintiff, or for any other cause; and in the absence of such evidence it must be assumed they were satisfactory to the defendants.  Certainly, when the proofs were served, the defendants were apprised that they related to the policy in question, and that they were given with the approbation. and authority of the plaintiff; and if not willing to receive them as a compliance with the condition of the policy, good faith and the law required them to say so, or be concluded from doing so thereafter.  There, was then time to correct the defects suggested in the notice and proofs, and doubtless it would have been done if the attention of the plaintiff had been called to them.  In strictness, probably, the notice and proof should have been in the name of the plaintiff, but it was competent for the defendants to waive the objection that they were not so; and this was done by their assent to them, inferable from their silence.  The papers were in substance all they would have been, as to reliability and otherwise, if they had been in the name of the plaintiff.  Every reason in support of the doctrine of waiver from omission to object, in reference to preliminary proofs in any case, applies in regard to this point in the present case.

The evidence of the agreement between the plaintiff and the Cooledges, that the former should keep the premises insured, and the latter should pay the premiums and have the benefit of the insurance, is not at all in conflict with the rule of

law that parol evidence cannot be received to contradict, vary or explain a written contract. The policy of insurance may have full operation according to its terms and import, and yet have been obtained at the expense of the Cooledges, and be held for their benefit. Proof of the object of the policy, the source from which funds were obtained to procure it, and that others than the person named in it as the insured, were, with him, to be benefited by the avails of it, assumes that the policy is to operate according to its language and legal effect. ( *Truscott* v. *King*, 2 *Seld.*, 147, 161.; *Chester* v. *Bank of Kingston*, 16 *N. Y.*, 336.) Whether the defendants knew of the agreement at the time of the issuing of the policy and assented to it or not, makes no difference in regard to this point. In either case, the contract of insurance between the defendants and the plaintiff is unaffected by it.

This evidence was material, as the effect of the agreement was to entitle the Cooledges to have the avails of the policy, in case of a loss, applied upon the bond and mortgage. The plaintiff held the policy as further security for the debt to apply upon the debt whatever should be received on the policy. Having this effect, the agreement precluded a resort by the defendants, on paying the loss, to the bond and mortgage, by way of subrogation, for their reimbursement. As payment of the loss would, to that extent, pay the bond and mortgage, the defendants could not, of course, derive any benefit from those securities in respect to the amount thus paid.

In this view of the agreement between the plaintiff and the Cooledges on the subject of insurance, and assuming that the defendants had no notice of it when the policy was issued, or before the loss; the question arises, whether, in connection with the other circumstances of this case, it forms a defence to the action. If the defendants on paying the loss could have an equitable interest in the bond and mortgage to the amount paid, they would ultimately recover

that amount with interest, and thus be made whole; but that is impracticable by reason of the said agreement. They claim that by their contract with the plaintiff as contained in the policy, they insured merely the debt of the plaintiff, and in case of a loss by fire and payment thereof to the plaintiff, were to have an interest in the bond and mortgage to that sum; and that as they cannot, on account of the agreement, of which they had no knowledge, have such benefit from the bond and mortgage, they are not liable on the policy.

It is important in the examination of this question to consider the nature and extent of the contract of insurance between the parties. The contract in terms expresses that the defendants insure the plaintiff, " as mortgagee, against loss or damage by fire," to the amount and on the buildings specified ; and agree to make good to the plaintiff " all such loss or damage, not exceeding in amount the sum insured, as shall happen by fire to the property as above specified," during one year ; " the loss to be estimated according to the true and actual value of the property." The loss against which the plaintiff is insured, is, by the very language of the contract, " to the property insured ; " the destruction in whole or in part of the value of the property by the total or partial burning of the property. In case of such loss it is stated that it is " to be paid within sixty days after due notice and proof thereof by the insured," in conformity to the policy. Whether the loss, by diminishing the mortgage security, endangers the collection of the debt, or the security remains ample, is not by the contract made of any importance ; in either case it is insured against and the amount of it is to be paid. Nothing is said in the policy in regard to the mortgage debt, nor is any allusion made to it, further than by the statement that the plaintiff is insured as mortgagee. I think it apparent, therefore, on the face of the policy, that the contract is in its nature an insurance of the property mortgaged, and not of the debt of the plaintiff. The debt

is important to an interest of the plaintiff in the property ; without an interest in the property the policy would be invalid, and the insurance is limited to that interest. The insurance thus has respect to the debt ; the mortgage lien is the basis and extent of the right of the plaintiff to insure ; but the insurance is upon the property, the subject of the lien.

If the insurance was of the debt, there should, to warrant a recovery, be a loss as to the debt, which has not occurred and cannot take place ; as the mortgaged property still far exceeds in value the sum unpaid, and the debtors are solvent. Regarding the insurance as of the debt, no risk has been insured by the defendants ; the policy was not only of no possible benefit, but worse, it has been a constant source of expense.

The insurance being of the property only, and the policy being silent in regard to the defendants, in any event, taking any interest in the bond and mortgage, there seems to be no ground for a claim under the contract to such an interest.

If an insurance company, insuring a mortgagee, is in any case, on payment of a loss, entitled to claim an interest in the debt to an equal amount, in regard to which there is some difference of opinion, it is only in cases where the sum received by the insured does not go in reduction of the debt, and the insured might otherwise, notwithstanding the payment of the loss, proceed to collect the whole debt of the mortgagor, or by the mortgage. The utmost the company can claim, is to be subrogated, as to the amount paid by them, to the right of the insured to collect the debt, irrespective of the sum received by him on the policy. It is a mere equity to be put in the place of the insured as to that sum, in regard to the bond and mortgage, whatever his rights may be. This equity does not arise out of the contract of insurance, but from all the circumstances of the case.

The plaintiff was not, in my opinion, under obligation to disclose to the defendants, without inquiry by them on the

Kernochan *v.* The New-York Bowery Fire Insurance Company.

subject, the agreement between the plaintiff and the Cooledges as to insurance. It was for the defendants, if they deemed it important to know whether any, and if so what, relation existed between the mortgagor and the mortgagee, as to the insurance, to seek for information about it, or make provision on the subject in the policy. If no fraud was practised by the plaintiff, by misrepresentations or evasions in relation to it, and none is pretended, the defendants have no ground of complaint against him.

The evidence of usage of the mortgagor to pay the premiums in cases of insurance for the security of the mortgagee, and the charge of the judge, if the foregoing views are correct, could not prejudice the defendants.

It follows that the judgment is right and should be affirmed.

All the judges concurred in this opinion, except SELDEN, J., who was absent, and ROOSEVELT, J., who expressed himself as follows:

ROOSEVELT, J. The plaintiff, Kernochan, being the owner of the premises, Nos. 80 Cliff-street and 323 Pearl-street, in the city of New-York, insured them against fire in the office of the defendants, in his own name as owner. Having subsequently made a sale to the Messrs. Cooledge, taking back a mortgage for the purchase money, he informed the insurance company of this change in his relation to the property, who, instead of executing new papers, continued the old policy in force, merely interlining the word "mortgagee" and altering the form of the subsequent premium receipts from "Joseph Kernochan" to "Joseph Kernochan, *mortgagee.*" And in this position the matter stood when the fire took place, on which the present action is founded.

The company, in addition to some formal objections, which I shall not discuss, to the plaintiff's recovery, take the position in their answer (and as matter of fact have proved it fully), that the lots, with the buildings burnt, are still

ample security; that they are worth several thousand dollars more than the balance due on the mortgage; and that the mortgagee, therefore, the only person insured, not having been damnified by the fire, has no ground of complaint, and of consequence no cause of action.

In their correspondence, however, with the plaintiff's attorney, and which it will be observed was given in evidence by themselves, the company presented their case in a somewhat different form. They offered "to pay the damage to the building by fire, being $3,192, with interest and costs," but accompanied the offer with a demand for an assignment, by way of subrogation, of "a sufficient portion of the mortgage" to enable them to reimburse themselves; or, if preferred, an assignment of the whole mortgage, they paying in that case the whole amount, about $15,000 remaining due upon it; a very equitable proposition, it may be, if no other parties then Mr. Kernochan were entitled to be consulted. But the Cooledges, it appeared, had an interest in the question. They had paid the premiums, and "it was the agreement, as Cooledge testifies, with Mr. Kernochan that he should keep the premises insured and we should pay the premium and we invariably paid the premiums at the time of the annual interest, up to and including May, 1853," the year in which the fire took place. The Cooledges, therefore, insisted that the insurance having been effected for their benefit and at their expense, the insurance money should be applied *pro tanto* to the discharge of their debt; and the counsel of Mr. Kernochan accordingly, in his reply to the company's proposition, declared that his client would accept the proffered tender, but would make no assignment of the bond and mortgage, or any part of it, by way of subrogation or otherwise.

The inquiry then is, and it is one of great practical importance in a community where the custom of taking policies as collateral to mortgages is almost universal, what are the relative rights of mortgagors and insurance companies in

these cases? Insurers are undoubtedly entitled to know not only what they insure but who they insure, and the character and extent of the risk. A. cannot in his own name, without communicating the fact, take a policy for B., or if he do and a loss happen, A. can recover nothing, because A., although insured, has lost nothing, and B. can recover nothing because B, although a loser, was not insured. Here, however the insurance was in the name, not of Kernochan, but of Kernochan " mortgagee." The company, therefore, were informed that there was a "mortgagor" in the case and that they had only to ask, as they probably did, in order to know who he was and what were his rights in the subject insured. Indeed, without such inquiry, they knew, as their president testified, that " as a general rule it is the practice for the mortgagors to pay the premium of mortgaged property when the policy accompanies the mortgage." He, their own witness, even went further: "I never knew," says he, " of an instance in which he, the mortgagor, does not either pay the premium or it is collected on foreclosure." When, therefore, Mr. Kernochan said to the company I am insuring no longer as owner but as mortgagee, he in effect told them that he was insuring for the mortgagor and that the mortgagor paid the premium, he holding the policy merely as collateral security for the debt.

How then can it be said, and the defendants' whole case rests upon that averment, that "it was proved on the trial that the defendants knew nothing of the plaintiff's agreement to keep the Cooledges insured." Does the mere statement of the president, that "we, the company, were never prior to the fire *notified* of that agreement," constitute such proof? A formal notification, perhaps, and that probably was all the witness meant, was not given. To an officer knowing the general usage that mortgagors in such cases almost invariably pay the premium, no literal notice was deemed necessary. The fact of the mortgage, which was distinctly communicated, carried with it the other fact as a

known ordinary incident; and he was bound to assume, in the absence of any statement to the contrary, that the insurance in this instance was effected with the ordinary understanding.

The president, it is true, endeavors, in his testimony, to take this case out of what he admits to be the "general rule." In his testimony he says: "After some conversation, I told him (Mr. Kernochan), it might be worth a little less to insure him as mortgagee, but we would not insure the owner at that rate." But the accuracy of his recollection is strongly impeached, if not overthrown. The receipts produced show, that Kernochan as owner, and Kernochan as mortgagee, was in fact insured at precisely the same rate, to wit, $40.50. And the witness himself adds, and the testimony of several others is to the same purport, that "there is no difference made in the rates of insurance between the insurance for owner and mortgagee." Is it likely, then, if we are to balance probabilities, that such a conversation as the one stated took place? Or, is it not much more consistent with probability to suppose, that the president, in his recollection, is mistaken? At all events, assuming, as I presume we must, that there was evidence both ways, it was proper for the judge, as he did, to submit it to the jury to say, "whether the defendants made the insurance under the understanding that the mortgagors paid the premium, and that the insurance was procured for their benefit as well as that of the plaintiff," or not. The judge even went further, and told the jury that if the alleged conversation took place, and the insurance was effected on that footing, "the plaintiff could not recover." In finding for the plaintiff, therefore, the jury must be intended to have declared that there was, in this case, no such special understanding, and no departure from the general practice. The verdict establishes, and such I think, were we at liberty on this appeal to review it, is the clear weight of evidence, the following facts:

First. That by agreement between the mortgagor and mortgagee, the latter was to effect the insurance for the benefit of both, according to their respective interests, and at the expense of the former.

Second. That the insurance company knew of this arrangement, and took an equivalent premium and were in no respect defrauded or misled.

Having, then, knowingly received the mortgagor's premium, the company are bound to make good the mortgagor's loss. They have no right to subrogation either as a condition precedent to their obligation to pay, or as a condition subsequent to actual payment. Such a right can only exist where equity demands its exercise. To allow it in the present case would, in effect, be to compel the insured to pay a premium without insurance, and to permit the insurer to exact a premium without risk.

Where a mortgagee insures solely for his own safety, and entirely at his own cost, a different question may arise. Yet even there the sufficiency of the remaining security would be no defence. The mortgagee would have a right to say: "I chose to have additional security and paid you for it, when you have fulfilled your obligation to me by paying the loss against which you insured, it will be time enough for you to claim a subrogation to my remedy against my debtor." Such was the case of *King* v. *The State Mutual Fire Insurance Company* (7 *Cush.*, 1), which proceeded upon the assumption, as stated by Chief Justice SHAW, "that the plaintiff made the insurance, which was of his interest, in his own name and for his own benefit, not describing himself as mortgagee, and paid the premium out of his own funds," and that "his interest, in fact, was that of a mortgagee." The company, as a condition, insisted upon an assignment of the mortgage, and on its refusal declined to pay the loss. Judgment was rendered against them.

In delivering the opinion of the court, although not necessary to a decision, the Chief Justice went even further and

contended that where the mortgagee himself pays the premium, he has a right both to the insurance money and to the mortgage debt; that there is no subrogation in such case, either before or after payment in favor of the company, and no defence of part payment in favor of the mortgagor, for the reason that neither the one in paying the loss nor the other in paying the debt does any more than each respectively contracted to do, and was paid for doing. This view, however, it will be seen, ignores the principle of public policy that no man should be allowed to bargain for an advantage to arise from the destruction of life or property, in other words, to lay a wager that a particular person will die or a particular property be burnt within a given period. We regard the contract of insurance as one purely of indemnity. Should it be said that insurance companies will receive premiums without a corresponding risk, the answer is that such suggestions may be safely left to the interest of the parties, who will soon adjust their premiums to the diminished losses.

The judgment of the Superior Court in favor of the plaintiff should be affirmed.

Judgment affirmed.