Folger, J.
This case comes up on exceptions to a refusal of motion for a nonsuit of the plaintiffs, made first at the rest of the plaintiffs’ case, and again at the close of all the proofs.
The defendant, by making this motion, concedes that the court may pass upon the facts; indeed, that there is no dispute as to the facts, and nothing therefore to be submitted to the jury. (Winchell v. Hicks, 18 N. Y., 558.) That they have presented in this court questions not made at circuit, cannot alter this rule.
We must, therefore, dispose of the case as we deem the facts to be, from our view of the evidence returned.
The claim of the plaintiffs, that the policy issued by the defendant was one for the reinsurance of the former against the risk taken by them, cannot be maintained. There is nothing in the form of the policy to indicate that it is a *348 contract for reinsurance. It seems, it is true, that a contract for reinsurance need not differ in form from one for original insurance. (N. Y. Bowery F. Ins. Co. v. N. Y. Fire Ins. Co., 17 Wend., 359.) In the absence, however, of any distinctive form of policy, the claim that the contract is one of reinsurance must be in some way sustained by the proof, more especially when, as in this case, the policy in terms runs to another than the one who claims the benefit of it as a contract for reinsurance. The testimony in this case falls far short of doing this. It is true that the agent of the plaintiffs applied to the agents of the defendant for reinsurance of the risk taken by the Commonwealth company. It was testified to, that the application was accepted and a binding receipt given. This is denied in the testimony given for the defendants. But if it be conceded to have been proved, it is also proven that the agreement to reinsure was thrown up by consent of both parties; that the binding receipt was returned; that it was expressly agreed that the policy to be issued by the defendants should not be one of reinsurance; that it should be one of insurance, running directly to the original assured. And so it was issued. The purpose of its procurement by McCarthy was twofold: that, in accordance - with the directions of his principals, he might cancel the policies issued by him for them; and that he might retain the patronage of Connelly by procuring this insurance for him. The relief of the plaintiffs from their contract was the object of McCarthy. Yet it was to be effected according to his first purpose; not by a continuance of their contract, and a repose by them upon the contract of the defendants as one of reinsurance, but by a substitution of the latter for i the former, and a cancellation of the former when substitution was made. This is plain. The clerk of the plaintiffs’ agent wrote to Mrs. Connelly, it is inferable, to that effect as soon as the contract of the defendants was obtained. This does away with the idea of reinsurance. For as soon as the policies of the plaintiffs should be canceled by their agent, they would have nothing at risk, and hence no insurable *349 interest, ami if the contract from the defendants was of reinsurance, upon the cancellation of the policies of the plaintiffs it ceased.
It is true, as urged by the plaintiffs, that, in dealing with contracts relating to insurance, the law looks very much to the substance of the matter and the real intent of the parties, and does not adhere with tenacity to the mere form. Tet that does not lead to a disregard of the form, when it is plain that it expresses the intention of the parties, and is the very shape of the contract made by them. The plaintiff cannot recover upon the transactions disclosed in the testimony, upon the ground of a reinsurance.
There are facts in the case, however, which dispose of the objections of the defendants to the plaintiffs’ recovery on the policy as one of original insurance, assigned to the plaintiff. It is proven that Mrs.Connelly, the assured named, had an insurable interest in the property; that James Connelly, her husband, was her agent, acting for her in looking after her interests in the mortgages bought of Dows & Co., and in procuring insurance for her and in paying the premium upon the policy issued by the defendants, and that he paid it, knowing it was going to the defendants for their policy theretofore issued; not only this, but from his power and authority as her agent he had an implied authority to conduct the business according to the ordinary custom of trade, and in the manner in which the matters intrusted to him were usually accomplished. Hence he had authority to employ McCarthy to procure for him and for her the desired insurance.
It appears that Connelly did not name to McCarthy any company from which he wished insurance, but stated the amount he wished, and that it be put in some good company. The act of McCarthy in obtaining the insurance from the defendants, and the act of Connelly in paying, practically with the money of the principal, for premium on this insurance, with knowledge of the policy upon which it was paid, were the acts of Mrs. Connelly, and bound the defendants to *350 her and she to them, in the contract which they issued to her, from the date at which the proposition for insurance was accepted by the defendants and the binding receipts issued.
Nor is this position open to the objection that McCarthy, being the agent of the plaintiffs, could not act for Connelly and for her. In any negotiation in which he represented an interest in opposition to hers, this would be so. In procuring the insurance from the defendants, he represented only her, and was bound only to guard her interests. There was no conflicting duty upon him. He had no authority, so far as is shown, from the plaintiffs to procure this insurance, and did not act for them therein. These facts are of great importance, indeed of controlling influence.
The defendant lays great stress upon the fact that the policies of the plaintiffs were not in fact canceled, and insist that there was an agreement with the defendants that this should be done. The case does not disclose an agreement with defendants so to do. It was, indeed, mentioned to the agents of the defendants that cancellation had been directed by the plaintiffs. It does not appear that it ivas part of the agreement for issuing of this policy, nor that it was an inducement to the issuing of it. No word to that effect is in the policy. On the contrary, by express words, other insurance is permitted, without notice, until notice is required. A willingness was expressed by the defendants’ agent, at the time this policy was issued, to take a risk to the amount of $10,000. Save the danger there might be of overinsurance, the continuance in existence of the policies of the plaintiffs would, in case of fire, have been a benefit to the defendants. And the idea of the General Term, that they remained in force, was of benefit to the defendants. It doubtless was the moving purpose of the agent of the plaintiffs, he being directed by them to cancel, to obtain that which would stand in stead with the insured, and thus to relieve his principals and retain to himself her patronage. It does not appear that it influenced the local agents of the *351 defendant, or that they had any purpose to relieve any one, or that their action was at all conditional, save upon the affirmance of it by the general agent at Albany. He was not informed of the policies of the plaintiffs when he approved of the risk taken for the defendant and when he issued an original policy for it to Mrs. Connelly. He could not, therefore, have been at all influenced in his action by any consideration of cancellation of the plaintiffs’ policies. It is safe to say that there was no agreement nor condition nor understanding that there should be a cancellation of the plaintiffs’ policies before this policy became a binding contract.
It is also argued that Mrs. Connelly could not both disaffirm and affirm this contract after the fire; that she could once only elect which she would do, and that one election when made was conclusive upon her. There are difficulties in the way of sustaining this position. Hot to mention others, this one is sufficient. We have already stated that Connelly was the agent of his wife in the management of her mortgage interest, and in procuring and paying for insurance to protect it, and that he paid the premium on this policy, issued by the defendants, with knowledge, he being her agent and McCarthy acting under him. Mrs. Connelly did not need to take action to affirm their doings for her. They were within the scope of the power and authority which her husband had as her agent. As soon as they acted, she was bound, and the defendants were bound, and the contract made became hers whether she knew thereof or not. It was not a case which required a ratification by her before there was an ownership in her of the policy. Their act was her act, and she could not avoid its effects upon her rights and interests by inaction.
Hor do we perceive that she has expressly repudiated this contract, as is claimed by the defendants, even if a declaration of repudiation would absolve the defendants and her from their obligations to each other. The proofs of loss, verified by her and served upon the plaintiffs, are relied upon *352 to make out a repudiation. She does, indeed, state in them that the policy was procured from the defendants by McCarthy, or by his direction or procurement, but without her knowledge, privity or information, or her knowledge of his intention so to do, and that she is informed that it was his intention to substitute the same for other policies issued to her, of which intention she denies knowledge. This is the extent of her declaration as tending toward a repudiation of the contract. She does not say that she did not assent to his action, after it had come to her knowledge, nor does she say that she does not then assent to it; and there was reason for caution in the statements made in the proofs of loss. They were made on the 5th day of January, 1871. The fire took place on the 22d of December, 1870. A day or two after the fire the agents of the defendant claimed to Connelly that his principal was not liable on the mill. It was incumbent upon the assured, while she stated the facts with truth, neither to make any claim which the facts would not sustain nor to give up any which they would. The proofs of loss state the existence of this policy very much as they do that of the policies issued to Dows & Co., without comment, on the bare facts which are set forth. It is not clear that the assured has, in these proofs of loss, put herself determinate^ upon a right of action against the plaintiffs alone, and disclaimed any right of action against the defendant.
Upon another point made by the defendant we think that, even if an insurance company may not purchase and take assignment of and prosecute a policy of insurance upon property, where it has no interest and no claim is made against it, there is no reason why it, or a receiver of its effects, may not, in such a case as this, where a claim is presented against it, and it is not, while unadjudicated, entirely clear that liability does not exist, make such an arrangement as has been made, with one who actually holds a policy issued by it. (Quebec Fire Ins. Co. v. St. Louis, 22 Eng. Law and Eq., *353 73; Mason v. Saulsbury, 3 Doug., 61; Barry v. Mich. Ins. Co., 1 Sandf. Ch., 280.)
Again, we are of the opinion that Mrs. Connelly had an interest as mortgagee in the property insured by the defendant to the full amount, at least, of their policy. Though the language of the description in the policy is involved, it must be taken to describe her mortgage interest not only in the mill but also in the machinery and fixtures, which, in legal contemplation, were included in the mortgage. (Biglin v. N. Y. Cent. Ins. Co., 20 Barb., 635; House v. House, 10 Paige, 158 ; Snedeker v. Warring, 2 Kernan, 170.) And though the risk was divided upon the building and upon the machinery, etc., the loss upon each was greater than the amount named in this policy. She had, it is true, paid but a portion of the amount she had agreed to give in purchase of the mortgages, but she was entitled to seek indemnity, not only to the extent to which she had paid, but the extent of the interest for which she had bargained and agreed to pay. This was the full amount secured and unpaid upon the mortgages.
The defendants further claim that Mrs. Connelly having been insured upon her mortgage interest, the loss sustained ■ by her thereon, for which a recovery can be had, can be no more than that which the mortgaged property shall fail to secure of her debt; and that, as it was proven that the mortgaged property after the fire was sold for $11,000, which was more than the amount she had paid on her contract to buy the mortgages, she suffered no loss, and therefore has no claim against the defendants.
We have already stated our opinion that her insurable mortgage interest, and hence the amount which she might lose, was not limited to the amount actually paid by her on that contract, but that it equaled the whole amount secured and unpaid upon the mortgages for which she was bound to pay. As there was due and unpaid upon the mortgages a sum of over $19,000, even if the premises had'been available to her, at the price at which they sold after the fire, there was still a *354 deficiency of more than the amount of the defendants’ policy.
To this the defendant says that if the plaintiffs’ policies are available to Mrs. Connelly for one purpose, as she claims, they are available to the defendant for another. They then insist that those policies should share in the payment of the loss, if any there is; and then, that if the insured must first exhaust her remedy against the mortgaged premises, the amount for the defendant to pay will be much less than the amount adjudged against them. If the premises of the defendants’ argument are sound, they are right that such consequence would follow. Without deciding whether the policies of the plaintiffs are in existence, so as to be available to Mrs. Connelly and also to the defendants for the purpose of this argument, we will dispose of the point upon the other branch of it.
And this raises the question whether a mortgagee, who has insured his mortgage interest in buildings and fixtures and machinery at his own expense and for his own indemnity, with no agreement or understanding with the mortgagor, must first exhaust his remedy on his mortgage before he can call upon the insurer to make good any part of the damage by fire to the property. The learned counsel for the defendant cites, for the affirmation of this position, Flanders on Insurance (p. 360) and Angelí on Insurance (§ 59). Flanders says of an insurance by a mortgagee: “ It is not the specific property which is insured, but its capacity to pay the mortgaged debt.” Angelí says: “It is but an insurance of his debt; and if his debt is afterward paid or extinguished, the policy from that time ceases to have any operation. And even if the premises are after that destroyed by fire he has no right to recover for the loss, for he has sustained no damage thereby.” These texts do not, in terms, sustain the propositions of the defendants; and it is only as a corollary, if at all, that it can be deduced from them. If it is the debt only which is insured, it may be said that until the debt, or some part of it, is lost, there *355 is no loss upon the policy, and that the debt nor any part of it is lost until the mortgagee fails to obtain it from an enforcement of his mortgage. Neither of these writers cites any decision which sustains the proposition of the defendants, except perhaps one. There are dicta in several cases which will be referred to. The one case is Smith v. Col. Ins. Co. (17 Penn. St., 253). There Gibson, J., states as a rule: “A mortgagee insures not the ultimate safety of the whole property, but only so much of it as may be enough to satisfy his mortgage. It is not the specific property which is insured, but its capacity to pay the mortgaged debt, and, in effect, the security is insured.” He does also, by way of illustrative enforcement of his argument, say that a mortgagee insured cannot recover of the insurer for the loss by fire of a few shingles from a building, when the premises are left amply sufficient to secure him his debt.
But when this case is closely scanned it is this : That an insurance of a mortgage interest is an indemnity against a loss of that debt by a loss or damage to the property mortgaged ; that if the mortgaged property is, after the loss occurs to it, still enough in value to pay the debt, there has been, in effect, no loss; that the insurer, having paid the mortgage, is entitled to have recourse to the mortgaged property, and, therefore (and this is the point made on the argument of that case and the point decided), that any concealment of the facts which affects the value of the property is an injury to the insurer and a material concealment which avoids the contract, inasmuch as, thereby, the insurer is misled as to the value of the property on which he relies for ultimate security and reimbursement. The insuree, having several mortgages upon the same property, insured his interest as mortgagee, disclosing the existence of but one, which was the last. This it was which was held to be a material concealment, and injurious to the insurer for the reason stated. We do not understand the learned judge to maintain that an insured mortgagee may not call upon the insurer to pay the loss upon the property, so long as the property remaining is enough to *356 satisfy the debt. It is true that there are to be found dicta of learned and eminent judges which it is claimed go the length of the proposition of the defendants. See Etna F. Ins. Co. v. Tyler (16 Wend., 385-397), where Chancellor Walworth says : “ In the present case all the insurable interest which Schaeffer had in the property * * * * was the amount of his unpaid purchase-money, so far as the land upon which the house stood was insufficient to protect him from loss, and provided the purchaser was unable to pay the same.” See, also, Carpenter v. Roc. Ins. Co. (16 Peters, 495-501), per Stort, J.: It is not in either of these cases declared that the mortgagee can claim no more of the insurer than what the security for his debt fails to yield. And if that should be held to be the rational sequence from what is stated, it is certainly to be said, as is said by Shaw, Ch. J., in King v. State Mut. F. Ins. Co. (7 Cushing, 1-11, 12), that a principle is stated not necessary to the decision of the cases. Kernochan v. Bowery Ins. Co. (17 N. Y., 428) is cited also, in which T. R. Strong, J.*, says: “ If the insurance was of the debt, there should, to warrant a recovery, be a loss as to the debt, which has not occurred arid cannot take place, as the mortgaged property still far exceeds in value the sum unpaid and the debtors are solvent.” We do not think that this is a statement of a principle, but an argumentative statement of what would be the result of a suppositious case, did it in fact exist, though neither its existence nor indeed the possibility of its existence, under like circumstances, is admitted. Moreover, it was not necessary to the decision of that case, even if it is taken as the statement of a principle. Mr. Parsons, in his book on Marine Insurance (vol. 1, p. 229), though inclining to the proposition presented by the defendants here, yet says: “We are not prepared to say that, whenever the insured interest is a lien, the insurer may interpose as a bar to a claim for a loss the remaining sufficiency of the property to pay the debt.” And in his work on Contracts (6th edition, 2d vol., pp. 339, 340), though he says: “ There is both reason and authority for saying that in such case he *357 has no claim on the insurer; ” yet he adds: “ This may not be regarded as an established rule.” There are some authorities which tend to the contrary. It is apparent that if it is the debt only of the mortgagee which is insured, and that he has no claim against the insurer until the mortgaged property is exhausted, that the same rule will apply as to the obligation of the mortgage debtor, and that the remedy against him must also be first exhausted. Yet this proposition does not seem to receive sanction. In Hancox v. Fish Ins. Co. (3 Summer, 132), the same eminent jurist who pronounced the opinion in 16 Peters (supra), said: “ It has been suggested that the plaintiff has in fact sustained no loss, because, for anything that appears, he may still recover the debts due to him from the seamen, and if so he has sustained no loss. * * * The question is not, in cases of this sort, whether the party has actually lost his debt, * * * * but is, whether he has lost the security for the debt. * * ” In Russell v. Un. Ins. Co. (1 Wash. C. C. R., 409; S. C., 4 Dallas C. C. R., 419), it was contended by the defendants, as it is by the defendant here, that the insurer might still resort elsewhere than to the insured, and that, therefore, there was no loss. The court did not sustain the position, saying that a loss had actually happened, and that, though the lien was not destroyed, yet it was such a loss as that the insured might, by an abandonment, throw it upon the underwriter. And see Godin v. Lond. Ass. Co. (1 Burr., 489). In the absence of direct authority, how is the reason of this matter 1 Can it be said, in any strict or legal sense, that the defendants have contracted to indemnify Mrs. Connelly for a loss of her mortgaged debt \ Whence is their power to guarantee the payment or collection of a debt ? Fire underwriters in these days, in this State, are the creatures of statute, and have no rights, save such as the State gives to them. They may agree that they will pay such loss or damage as happens by fire to property. They are limited to this. It was not readily that it was first held that they could agree, with a mortgagee or lienor of property, to reimburse to him *358 the loss caused to him by fire. He is not the owner of it; how, then, can he insure it, was the query. And the effort was not to enlarge the power of the insurer so that it might insure a debt, but to bring the lienor within the scope of that power, so that the property might be insured for his benefit. And it was done by holding that, as his security did depend upon the safety of the property, he had an interest in its preservation, and so had such interest as that he might take out a policy upon it against loss by fire, without meeting the objection that it was a wagering policy. The policy did not, therefore, become one upon the debt, and for indemnification against its loss, but still remained one upon the property and against loss or damage to it. It is, doubtless, true, as is said by Gibson, J., in 17 Penn, (supra), that in effect it is the debt which is insured. It is only as an effect, however; an effect resulting from the primary act of insurance of the property which is the security for the debt. It is the interest in the property which gives the right to obtain insurance, and the ownership of the debt, a lien upon the property, creates that interest. The agreement is usually, as it is in fact in this case, for insuring, from loss or damage by fire, the property. The interest of the mortgagor is in the whole property, just a-s it exists, undamaged by fire at the date of the policy. If that property is consumed in part, though what there be left of it is equal in value to the amount of the mortgage debt, the mortgage interest is affected. It is not so great, or so safe, or so valuable, as it was before. It was for indemnity against this very detriment, this very decrease in value, that the mortgagee sought insurance and paid his premium.
To say that it is the debt which is insured against loss, is to give to most, if not all, fire insurance companies a power to do a kind of business which the law and their charter do not confer. They are privileged to insure property against loss or damage by fire. They are not privileged to guarantee the collection of debts. If they are, they may insure against the insolvency of the debtor. Ho one will *359 contend this; and, it will be said, it is not by a guaranty of the debt, but an indemnity is given against the loss of the debt by an insurance against the perils to the property by lire. This is but coming to our position; that it is the property which is insured against the loss by fire, and the protection to the debt is the sequence thereof. As the property it is which is insured against loss, it is the loss which occurs to it which the insurer contracts to pay, and for such loss he is to pay within the limit of his liability, irrespective of the value of the property undestroyed. So as to the remark, that it is the capacity of the property to pay the debt which is insured. This is true in a certain sense; but it is as a result and not as a primary undertaking. The undertaking is that the property shall not suffer loss by fire; that is, in effect, that its capacity to pay the mortgaged debt shall not be diminished. When an appreciable loss has occurred to the property from fire, its capacity to pay the mortgaged debt has been affected; it is not so well able to pay the debt which is upon it. The mortgage interest, the insurable interest, is lessened in value, and the mortgagee, the insuree, is affected, and may call upon the insurer to make him as good again as he was when he effected his insurance.
Another consideration: It is settled that when a mortgagee, or one in like position toward property, is insured thereon at his own expense, upon his own motion and for his sole benefit, and a loss happens to it, the insurer, on making compensation, is entitled to an assignment of the rights of the insured. This is put upon the analogy of the situation of the insurer to that of a surety. If this analogy be made complete, then has the insurer no more right to refuse payment of the loss, so long as the insured has other remedy for his debt, than ha¡? the surety. One as well as the other, as soon as the creditor’s right to make demand is fixed, must respond to it and seek his reimbursement through his right of subrogation; and, indeed, the application of this equitable right of subrogation makes our view of this subject harmonious and consistent with all the rights and interests of all the parties.
*360 As we have viewed and treated this case, we are not required to meet the contention of the defendants; that though the two policies of the plaintiffs and the policy of the defendants be treated as subsisting contracts, nominally for $1,500, yet, as the premium on but half that sum was paid, there was really insured only the amount of $7,500. We have not considered it necessary to pass definitely upon the question whether Mrs. Connelly could pursue the plaintiffs upon the policies issued by them.
The fact that the proofs of loss show that there was insurance upon the property running to James Connelly, the mortgagor, as the insured, but with a memorandum that the loss, if any, should be payable to David Dows & Co., does not affect the relations of the defendants with Mrs. Connelly and her assignees. It does not appear, from the proofs of loss, that the loss on these policies should be payable to David Dows & Co., as mortgagees of the property, and we are not called upon to make an inference to that effect.
They may have had other claims against Connelly and liens upon his property. This point does not appear to have been raised until the case reached this court. This consideration is of force, for James Connelly, as the insured, had an interest in the policies, the loss whereon was payable to Dows & Co. • and any loss paid upon them would need be in some way applied to his benefit. There are other considerations which suggest themselves growing out of the reciprocal rights and obligations of debtor and creditor, and insured under such a policy, and of Mrs. Connelly and Dows & Co. under their contract, which cannot have a satisfactory or safe determination without all the facts which both sides might furnish. The varied suggestions, interrogatively put by the learned counsel for the defendants on his points, show that there may be many facts lacking necessary to a satisfactory solution, and which might, perhaps, have been produced had the point been made at the trial court.
We have considered the many interesting points presented by the learned counsel for the defendants, but are not able to *361 find sufficient ground for the reversal of the judgment appealed from.
The judgment should, therefore, be affirmed All concur, except Chubch, Ch. J., not voting.
Judgment affirmed.