THE BOUND BROOK MUTUAL FIRE INSURANCE ASSO-
CIATION

*v.*

EMILY A. NELSON et al.

A vendor held a policy of insurance on the dwelling-house standing on the premises sold. She took a mortgage for a part of the purchase-money, which was in excess of the amount due on the policy. She did not assign the policy at the time of the conveyance, nor until after the house had been burned. The insurance company tendered· her the amount due on the mortgage and demanded an assignment of it, which was refused.—*Held*, that the company was entitled to the mortgage. *Held, also*, that in order to carry costs, it was not necessary that the company should tender the whole amount of the unpaid purchase-money.

On bill, answer and proofs.

*Messrs. Gaston & Bergen*, for complainant.

*Mr. R. V. Lindabury* and *Mr. J. D. Bartine*, for defendants.

BIRD, V. C.

Mrs. Nelson was the owner of a tract of land. The dwelling-house thereon was insured in the complainant's company for $1,200. On December 17th, 1884, she sold and conveyed the premises to her sons George and Albert, by deed with full covenants of warranty. At the same time, the sons executed to her a purchase-money mortgage for $1,500, being one-half of the consideration-money. The deed was placed in the clerk's office for record immediately after its execution and delivery. The mortgage was executed by Albert and wife and by George, but not by George's wife, she not being present. There is some dispute as to the precise disposition of the mortgage after it was so executed; the defendants claiming that it was delivered to Albert, to be retained by him until George's wife could be produced to join in the execution of the mortgagè, and until George could raise a small portion of the consideration-money to be paid

by him. I do not think there is any room for doubt on this branch of the case. Without hesitation, I find that the mort-- gage was delivered to Mrs. Nelson. By her proof of loss she swears that she took such mortgage as part of the consideration. Having been delivered to her, the transaction was complete. She, being the mortgagee, could not hold it in escrow. The mortgage having been given for a part of the purchase-money, it was not essential that the wife of the mortgagor should join in its execution.

An effort was made to sustain this branch of the defence by showing that the consideration-money was not all paid by the one son or the other, and that the parties intended to suspend its completion until such payment could be made. But the conduct of the parties, and their relations to each other at the time, and before the delivery of the deed, very satisfactorily proves that what they did was complete in itself, and that for what remained to be done there was the same implicit confidence that it would be done as had been exhibited before between them. For example, the mother was indebted to the one for about $700, and to the other about $250, without having given security for either debt. These claims were canceled, or intended to be, at the time of this transaction. The testimony is that Albert gave up his note at the time. George says that the exact amount due him from his mother was $239, and that she was to give him a note for it, but never did so. He says that was to go as part payment on the farm, and the balance he was to pay to his mother. I repeat that to my mind it seems clear that in the law the transaction was complete between the parties.

As the deed and mortgage were delivered on the 17th of December, 1884, the house was burned on the 25th of that same month. At that time Mrs. Nelson held both the mortgage and the policy of insurance. The complainants admit that she had an insurable interest in the premises to the extent of the unpaid purchase-money, and that from the time of proof of loss they have been willing to pay her the amount of the policy. The complainant tendered to her the amount of money due upon the policy, and demanded of her an assignment of her interest in

the mortgage to that extent, but she refused to make such an assignment. Upon such refusal the company tendered to her the amount due upon the policy, with such additional amount as represented the balance due upon the mortgage, and demanded an assignment of her interest in the bond and mortgage, which Mrs. Nelson also refused.

Was Mrs. Nelson justified in this refusal? In other words, had the company a right, upon payment of the amount due according to the proof of loss upon the policy, and the additional amount between that sum and the amount due upon the mortgage, to stand in her place? - Independent of the rights of others, there seems to be no doubt of their right to subrogation. *Sussex County Mutual Fire Ins. Co.* v. *Woodruff, 2 Dutch. 541; Springfield Ins. Co.* v. *Allen, 43 N. Y. 389; Kernochan* v. *New York Bowery Fire Ins. Co., 17 N. Y. 428; Ætna Fire Ins. Co.* v. *Tyler, 16 Wend. 385; Hall* v. *Nashville R. R. Co., 13 Wall. 367; Foster* v. *Van Reed, 70 N. Y. 19.*

But it is said, in this case, that the rights of the sons in equity prevent the application of the doctrine of subrogation. The claim is that the sons have the right to stand in the place of the mother, and not the company; and that although they did not have the policy assigned and transferred to themselves and have such assignment approved, they intended to do so. The testimony leads me to the conclusion that so far as there was any intention on the part of the sons to have the policy transferred to them and then retransferred to their mother as collateral security, it was but a faint or uncertain intention. If there was any intention whatever it was not so followed up or prosecuted as to justify the court in aiding the defendants George and Albert. It may well be said that it is the duty of the court to aid those who otherwise suffer when an accident intervenes and prevents them from the accomplishment of an object which they are honestly in the pursuit of diligently. But with honest intentions there must be diligence; otherwise the court will frequently aid in the commission of the greatest injustice; otherwise it will only be necessary, in such cases, for parties to say: "We will complete or execute the transfers by-and-by, or at some other time," and be

perfectly safe, because under the protection of the court. The doctrine contended for is salutary, but the company against whom it is sought to be applied is certainly entitled to protection from laches.

In this case there were no steps taken by the sons, until after the house had been burned, to have the policy transferred and such transfer approved. One of the by-laws of the company is that " no transfer of any policy of insurance of the said company shall be valid until approved by an insurance committee and certified by the secretary on the policy ; in all cases of transfer new notes shall be given." . These requirements were in no sense complied with, and not a single step taken to show an honest and *bona fide* intention to comply with them. When the deed and mortgage were executed and delivered the parties were with their counsel at the county seat of the county in which the complainant's company is established and has always had its offices. It seems to me that, while it is competent for the court to listen to the sworn statements of parties in such cases that it was their intention to do this or that, unless such intention is manifested and supported by some act done, with due diligence, the chances that the court will do injustice will greatly preponderate if it be governed by such declaration. Hence I conclude that this defence in behalf of the sons also fails.

My attention was called to the doctrine of subrogation as laid down in *Wood on Fire Insurance.* After a careful examination of Wood's exposition of the law of the cases on which he rests his conclusions, I find myself unable to place these parties within either the one or the other.

Again, it was urged that the complainant, in case it was otherwise entitled to recover, was not entitled to costs as against Mrs. Nelson, for the reason that it did not tender to her the whole amount due to her. The claim is that the amount of the mortgage, and also the difference between $239 and the interest thereon for a short time, and $750 (being the whole balance of the purchase-money unpaid and unsecured), should have been tendered. As I understand the evidence, Mrs. Nelson made her claim for the benefit of the insurance because she held the mort-

South Branch R. R. Co. *v.* Parker.

gage, and not because of any vendor's lien.   Making her claim on this ground, she could not expect the company to treat or deal with her on any other ground.   She might perhaps refuse to accept only a portion of her security.   But it is certainly different when we consider her rights under the law respecting vendor's lien, when applied to *this* case.

Not that there would be any difference between the rights of a mortgagee and a vendor (which I am not discussing).   But in this case Mrs. Nelson has herself done an act which I think prevents her from insisting that she shall not pay costs.

That act was the taking of mortgage for *a portion* of the unpaid purchase-money, which in this case was in excess of the amount due on the policy.   In so doing she had divided her lien or claim.   She is now no worse off in any sense than she then was.   If it was her intention to retain her lien as vendor, she still has it, notwithstanding the court may order the assignment of the mortgage to the complainant.

I think the complainant is entitled to a decree, with costs, as against all of the defendants.