EMILY A. NELSON et al., appellants,

*v.*

THE BOUND BROOK MUTUAL FIRE INS. CO., respondent.

Mrs. Nelson, the appellant, took out a policy of insurance in a mutual company on buildings on lands owned by her. Afterwards she agreed verbally to sell the premises to her two sons, one-half of the consideration to be paid in cash and the balance secured by a mortgage on the premises, and the policy was to be assigned to them as owners as soon as the deed had been executed, and then to be re-assigned by them to her as mortgagee. The deed was made and delivered and recorded, and the mortgage was also executed then by both the sons, but by the wife of only one son, the other not being present, and it was left in the appellant's custody until the absent wife should sign it, when the balance of the purchase-money was to be adjusted and the arrangement as to the insurance consummated. Before that occurred, however, the buildings were burned.—*Held*, that the company was not, by subrogation, entitled to an assignment of the mortgage after having paid the appellant the amount of the policy.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Bound Brook Association v. Nelson, 14 Stew. Eq. 485.*

*Mr. R. V. Lindabury,* for appellants.

*Messrs. Gaston & Bergen,* for respondent.

The opinion of the court was delivered by

KNAPP, J.

Mrs. Nelson, the appellant, took out from the respondent company a policy of insurance against loss by fire on certain buildings on the farm owned and occupied by her at the time. The buildings were burned, and the company paid to her the amount of the loss..

Before the destruction of the buildings, the appellant, Mrs. Nelson, by a verbal agreement with her two sons, bargained for a sale to them of the entire property for $3,000, one-half to be paid in cash or its equivalent, the balance to be secured to her by bond and mortgage on the property. It was further stipulated between them that, upon the execution of the conveyance, the vendees should have an assignment of the policy to them as owners, and re-assign it to her as collateral security upon her mortgage. In the *interim,* the policy should remain for their joint protection on the building, the vendees engaging to pay all subsequent assessments on the policy. No time was appointed for concluding the transaction, but the parties chancing to meet at the office of a conveyancer had the deed and mortgage drawn. The deed was signed and acknowledged by the vendor, and left by the parties with the county clerk to be recorded. The mortgage was signed and acknowledged by the vendees and the wife of one of them who was present, and its custody given to the vendor to hold until the absent wife could be brought to sign it, when the balance of the purchase-money was to be adjusted and the insurance as arranged for effected in completion of the bargain. Before the parties met again after the execution of the papers the fire occurred. Upon paying the insurance money by the company, an assignment of this mortgage to it was formally demanded of Mrs. Nelson. She refused to assign it, and the respondents filed a bill praying subrogation

to her rights under the mortgage, and that she be decreed to assign it to the company. The court below so decreed, and from that decree the defendants below appealed.

The policy which Mrs. Nelson held was the ordinary one insuring her as owner against loss by fire. It expressed no undertaking on her part to assign to the underwriters, in any event, the whole or any part of the property insured, or any interest in or security which she might hold against it. The respondent's right to such decree, not resting upon express contract, must be based upon special circumstances such as give it just claim to that advantage. To decree it when not founded in conventional right is the ministration of a pure equity, and one claiming it must show that it is due to him, and is not unjust or inequitable to other parties in interest. *Kernochan* v. *Bowery Ins. Co., 17 N. Y. 428.*

The respondent does not rely upon the terms of its contract to support its present claim, but bases it upon changes in the relation of the assured toward the property through the contract of sale, which it alleges create other rights and duties between the insurer and the insured, out of which comes this resulting equity. It is said that through the sale to her sons she ceased to be owner and became mortgagee for part of the consideration, thereby cutting down her insurable interest as owner to that of a lien for the payment of her debt, and reducing the obligation of the insurer from an undertaking of absolute indemnity against loss on the property to a special indemnity against loss on her mortgage debt ; that as an insurer of the interest of a mortgagee, the right to subrogation to the security arises on payment of the debt.

Conceding that a mortgagee, who, on his own behalf and for his own protection solely, takes out a policy to secure his mortgage debt, may be called upon to assign his security to the insurer who pays his debt on the occurrence of a loss, it becomes an essential fact for the complainant to establish in maintenance of its theory that Mrs. Nelson had changed her character as owner to that of mortgagee. If the treaty between herself and her sons for the conveyance of the property was at the time of the loss by fire in an incomplete and inchoate state, a mere executory contract, no steps in its progress toward final execution can

Nelson v. Bound.Brook Mutual Fire Ins. Co.

be seized hold of to determine her real *status*. She remained, in legal contemplation, the owner until within the intention of the parties the contract became executed in all its essential terms. Until then, loss on the property in risk was her loss, and under the terms of the policy the company was bound to pay in discharge of its contract obligation.

The parties to the contract of sale appear to have been fully agreed upon the terms of their bargain. Those terms have already been recited in sufficient detail for our purposes, and they meet with no substantial contradiction in the evidence. The transaction was intended by the parties to be an entire one, and in their minds was not regarded as an executed agreement when the deed and mortgage were exchanged, nor was it to become so until the execution of the mortgage was perfected as stipulated for, the balance of the consideration-money paid and adjusted, and the building protected by insurance for the interest and benefit of both. The execution of the papers needed in the transfer of title was for the convenience of the parties who lived at a distance from each other; and it was between those whose relations suggest trust and confidence. What was done respecting the conveyance was not regarded by the parties as the conclusion of their bargain, nor was the bargain considered by them as attaining completion until the balance of the consideration should be paid and insurance effected. I think it is clear that at the time of the fire the treaty for the sale of the property, which on its execution would change Mrs. Nelson's rights as owner to those of mortgagee was *in fieri*, and her ownership remained. This conclusion is not disturbed by the suggestion of counsel that the appellant, Mrs. Nelson, has a vendor's lien for the balance of the purchase-money which she can enforce in equity against her vendees. In the contract to sell she did not contemplate any such reliance for payment. She bargained for cash and the cancellation of notes held against her, which were the equivalent of cash; and this is a very different thing from a vendor's lien, if that be her right. This, instead of showing an executed agreement, tenders to her a means through litigation with her vendees for the enforcement of unperformed stipulations.

But if it be conceded that the transfer was complete, so as to vest the title in the grantees in the deed, and to convert her interest in the lands to that of mortgagee, the case is not one in which subrogation can be claimed.

It is not a case where the insurer reserves in the provisions of his policy the right to an assignment of the mortgage upon payment of a loss, as in *Foster* v. *Van Reed, 70 N. Y. 19.* There the right resting upon express contract cannot be defeated or impaired by any private arrangement between the assured and the owner of the equity of redemption. Nor is it of that class of cases where a mortgagee insures his mortgage interest " at his own expense, upon his own motion and for his sole benefit." In such cases, says Judge Folger, in *Excelsior Ins. Co.* v. *Royal Ins. Co., 55 N. Y. 343, 359,* " the insurer, in making compensation, is entitled to an assignment of the rights of the assured." The remarks made by the learned chancellor in *Sussex Ins. Co.* v. *Woodruff, 2 Dutch. 541,* were in respect to insurance of a like interest by the mortgagee without the knowledge or concurrence of the mortgagor.

Under a contract of insurance made by a mortgagee, entirely on his own behalf and at his own expense, for indemnity against loss by destruction of the pledge, the owner of the equity of redemption can have no interest, and payment of the loss does not go in satisfaction of the debt. Subrogation can in such case harm no one. And without it the mortgagee might collect his debt twice. The right does not rest on the relation of suretyship. Mr. Justice Bradley says, " Where a creditor effects insurance on property mortgaged or pledged to him as security for the payment of his debt, the insurers do not become sureties of the debt, nor do they acquire all the rights of sureties. They are insurers of a particular building only." *Ins. Co.* v. *Stinson, 103 U. S. 25.*

If such were the true character of the insurer, it would place serious impediments in the way of contracts between mortgagor and mortgagee, in respect to insurance of the mortgaged premises, which are held to be entirely legitimate. The ordinary insurance clause in mortgages may be mentioned as an instance.

A more reasonable ground for subrogation in these cases lies in the fact that insurance by the mortgagee, such as gives the debtor no benefit of money recovered on a loss, would, without subrogation, convert what is designed as a contract of indemnity into a wager policy. The mortgagee could demand payment of the loss to the extent of his mortgage without reducing the mortgage debt. Public policy condemns such contracts.

But there is neither reason nor good policy in compelling a mortgagee to assign his security where, through an arrangement between the mortgagor and mortgagee, insurance on the mortgaged premises is effected for their common benefit, although the policy be taken in the name of the mortgagee. Where a policy is so taken out, under the insurance clause in a mortgage, payment of a loss to the mortgagee inures to the benefit of the mortgagor, and it is immaterial under such stipulation in whose name the policy be procured. *Waring* v. *Loder, 53 N. Y. 581,* and cases cited.

A policy effected under such an agreement, in the name of the mortgagee, to secure the mortgaged premises against loss by fire will protect the mortgagor, and payment to the mortgagee, *pro tanto,* discharges the debt. Such an agreement between the mortgagor and mortgagee is not regarded as any infringement upon the rights of the underwriters. The mortgagee becomes bound to give the credit to his mortgage debtor. His right is not to withhold it, and subrogation is only to such rights as he has.

In *Sheldon on Sub.* § *235,* it is said: " If the mortgagee has procured the insurance, though in his own name, at the request and expense and for the benefit of the mortgagor, as well as for his own protection, though this is by a parol agreement unknown to the insurers, the mortgagor will have the right, in case of loss, to have the avails of the policy applied for his relief towards the discharge of his indebtedness."

This statement of the rule is well supported by numerous cases cited by the author. *Kernochan* v. *Bowery Ins. Co., 17 N. Y. 428; Hay* v. *Star Ins. Co., 77 N. Y. 235,* and *Clinton* v.

*Hope Ins. Co., 45 N. Y. 454,* fully support the rule as stated in the text.

In *Clinton* v. *Hope Ins. Co.*, just cited, it was applied to a state of facts in close similarity with the present case. The owner of the property had taken out a policy on buildings and personalty contained therein, and while it was running agreed to convey the property to a vendee, who paid part of the purchase-money. The vendor agreed to hold the policy for their mutual benefit, the vendee agreeing to return the vendor the unearned portion of the premium on the policy. The case, in one of its aspects, was considered by the court in the light of an executed sale, and the court denied the right of the insurer to subrogation to the vendor's claim for balance of purchase-money, because of the agreement in the contract of sale to hold the policy for their mutual benefit. The court say: " If, as between the parties to the contract of sale, the vendee was entitled to the benefit of the insurance moneys in case of loss, the defendant, the company, can assert no equity in hostility to that arrangement. The equity of the defendant is the equity of the vendors, and an arrangement between the vendors and vendee in respect to the application of the proceeds of the insurance did not violate any contract between the insurer and the insured. The defendant, on payment of the indemnity promised, simply performs his contract."

The rule above exemplified has the support of authority and is, as I think, based upon good reason and sound policy.

The principle is not that the right of substitution arises where the underwriter pays loss on a policy of insurance effected by a mortgagee upon the mortgaged premises. The insurance contract imports no such equity in the insurer. If it be awarded to him, it is entirely in virtue of some train of circumstances that render the claim an equitable one.

The contract with Mrs. Nelson on the part of the company was an indemnity against loss in the destruction of the buildings for which the usual premium and obligation required by the company for such insurance was demanded and received. On this policy, unchanged in its terms, the loss was paid. Now,

the respondent claims a different *status* from that assumed in its contract, and claims its liability to be of a different nature, because of the new attitude which the insured assumed through her contract to sell. Yielding that to the respondent, certainly it must take its new position, not upon a partial view or selected part of her contract. When it puts itself on her agreement, it does and must accept it as a whole, because her rights under that agreement, and those of her vendees, are to be determined on the entire terms of it. Among these, she engaged to hold her policy for the joint protection of herself and her vendees, and the latter assumed to pay all subsequent assessments upon it.

She cannot, under her contract with him, refuse to allow the proceeds of the insurance to reduce, *pro tanto*, her claim against them, and her rights in this regard are the respondent's rights.

For these reasons the decree below should be reversed, and the bill be ordered dismissed, with costs.

