FRANCIS E. FOSTER & another *vs.* EQUITABLE MUTUAL FIRE INSURANCE COMPANY.

An assignment, of a policy issued by a mutual fire insurance company, made, with the assent of the insurers, to a mortgagee of the property insured, on his giving a written promise to pay all future assessments on the policy, and agreeing that the property shall continue subject to the same lien for the payment of assessments as before, constitutes a new contract between the mortgagee and the insurers, which is not affected by the mortgagor's subsequent alienation of the equity of redemption, nor by his grantee's obtaining subsequent insurance thereon.

A mortgagee's right to recover on a policy on his interest in the mortgaged property is not affected by the repair of the loss by the owner of the equity of redemption.

ACTION OF CONTRACT on a policy of insurance, numbered 4882, and dated June 10th 1851, whereby the defendants, a corporation established by the laws of New Hampshire, in consideration of the payment of a premium of $2.30, and the giving of a deposit note for $66.50, insured Noah A. Worcester $1,330 on his dwelling-house in Stoneham in this county, for six years, "under the conditions and limitations contained in the accompanying articles." The articles annexed were the act of incorporation and by-laws of the company.

The fourth section of the act of incorporation provides that

" the property insured shall be holden as security for the pay-ment of any deposit note, and the cost which may accrue in collecting the same; and such lien shall continue during the existence of said policy and the liability of the assured thereon, notwithstanding any transfer or alienation thereof."

The seventh section of the act of incorporation is thus: " When property shall be alienated, the policy thereon shall be void, and shall be surrendered to the directors to be cancelled; and upon such surrender, the assured is entitled to his deposit note, upon the payment of his proportion of the losses and expenses up to the time of such surrender: Provided, however, that the purchaser, having the policy assigned to him, may have the same confirmed for his benefit by the directors, within thirty days next after such alienation, in which case the assignee shall be liable to the conditions of the original insured, and will be required to guaranty the payment of the deposit note."

By the eighth article of the by-laws, " no insurance shall sub-sist in this company and in or by any other company, person or persons, without the consent of the directors indorsed thereon · nor shall any policy, issued on property already insured, be valid, unless that fact be expressed in the application."

The parties submitted the case to the court upon the follow-ing statement of facts: On the 8th of August 1851 Worcester mortgaged the insured property to the plaintiffs to secure the payment of $525.50, with a condition to keep it insured for the benefit of the plaintiffs; and on the same day assigned this policy to the plaintiffs by a written indorsement thereon in the following words: " The within written policy of insurance is, on pledge, hereby transferred and assigned as collateral security to F. E. Foster & Co. of Medford, Mass., with all the advan-tages and benefits secured to me thereby." The defendants approved and recorded this assignment, first requiring of the plaintiffs a note in the following form: " Policy No. 4882, issued by the Equitable Mutual Fire Insurance Company to Noah A. Worcester, dated the 10th day of June 1851, having been assigned to us, in consideration thereof we hereby promise to pay said company all assessments hereafter made against

said policy, agreeing hereby that the property insured shall be subject to the same lien for the payment of assessments as heretofore." And this note was given by the plaintiffs, and is still held by the defendants, in addition to the note given by Worcester when the policy issued.

On the 25th of February 1853, Worcester by his warranty deed alienated and conveyed the property to Orin Hersom, subject to the plaintiffs' mortgage. On the 2d of March 1853, Hersom obtained from the Lowell Traders' and Mechanics' Mutual Fire Insurance Company a policy of insurance on the same property for the sum of $1,300, payable in case of loss to the plaintiffs to the extent of their claim as mortgagees. About two weeks later, Hersom informed the plaintiffs of his purchase of the property and obtaining insurance thereon. To which the plaintiffs replied that it made no difference to them, as they were insured by the defendants, and should look to the defendants until they got their money. The plaintiffs never gave the defendants any notice of the sale of the property by Worcester to Hersom.

On the 20th of April 1853, the property insured was damaged by fire to the amount of $574, of which the plaintiffs gave due notice to the defendants. After the fire, but before the commencement of this action, Hersom, without the consent or objection of the plaintiffs, repaired the property, and made it as good as it was before.

*S. B. Perry*, for the plaintiffs.

*I. W. Beard*, for the defendants.

BIGELOW, J. A clear understanding of the contract, which subsisted between the parties to this action at the time of the loss by fire, will lead to a ready solution of the questions raised by the agreed statement of facts.

The plaintiffs do not stand, as the argument for the defendants seems to assume, in the position of mere assignees of a policy, issued in the name of another person, and intended to cover only his interest in the property insured. Such would have been the relation of the parties, if the policy, originally issued in the name of Worcester, had been assigned to the

plaintiffs, with the assent of the defendants, without any liability on the part of the plaintiffs to pay the deposit note. It would then have been an insurance of Worcester's interest in the property, in which the plaintiffs could have had no other interest than that of assignees of a chose in action. But the transaction in the present case was of a different character. The defendants did not rely on their contract, as originally made with Worcester, looking to his personal responsibility, and their lien, if any, on the property, as their only security for the payment of the deposit note. But upon the transfer of the policy to the plaintiffs as mortgagees, and in consideration of the assent of the defendants thereto, they required the plaintiffs to give them a promise in writing for the full amount of the original note, as security for the payment of such assessments as might be made on the policy, accompanied by an agreement that the property insured should be subject to the same lien therefor as it had been before the assignment. The legal effect of this transaction was to create a new, substantive and distinct contract of insurance with the plaintiffs. They had a separate interest, as mortgagees, to be protected by the policy. For a new and independent consideration, the defendants agreed to insure this interest to the plaintiffs, and thereby the parties assumed toward each other the relation of insurer and insured. The original policy in the name of Worcester formed, it is true, the basis of the contract, and the plaintiffs were bound by the representations and acts of Worcester prior to the assignment to them. So far, they stood in the right of Worcester; but, beyond that, the rights of the parties depended upon the contract, which, for a new consideration, had been entered into between them. It was substantially the same as if the policy had been issued to the plaintiffs as mortgagees. And such, we think, is the legal effect intended to be given to policies, in the hands of assignees, by the seventh section of the act incorporating the defendants, by which it is provided that alienation of property insured shall avoid the policy, unless the purchaser, having the policy assigned to him, shall have it confirmed for his benefit; " in which case the assignee shall be liable to the conditions of the original

insured, and will be required to guaranty the payment of the deposit note." This is manifestly intended to create a new contract of insurance between the assignee and the company, upon the basis of the original application and policy. It substitutes a new party in place of the original assured, and for a new consideration agrees to protect his interest in the property covered by the policy.

It follows, as a necessary consequence of this view of the contract between the parties and their relation to each other, that no act of the person in whose name the policy was first issued, done subsequent to the assignment and its approval by the defendants, or of any other party having an interest in the property insured, acting without the concurrence of the plaintiffs, can in any way affect or impair the rights of the plaintiffs under the policy. It is the act of the party insured, in violation of the conditions and stipulations contained in the policy, which alone can avoid the contract. It would be an anomaly, if a party were made liable to lose the benefit of a contract made with himself, and for which he had paid a full and adequate consideration, by the acts of strangers or those over whom he had no control. *Tillou* v. *Kingston Mutual Ins. Co.* 7 Barb. 570, and 1 Seld. 405.

The result is, that the alienation of the right in equity by Worcester, having been made without the concurrence of the plaintiffs, however it might affect his rights under the original policy, does not avoid the claim of the plaintiffs as mortgagees for an indemnity under their distinct and independent contract of insurance with the defendants.

For the same reason, the subsequent insurance on the property does not invalidate the plaintiffs' claim. It was procured by a third party, without the knowledge of the plaintiffs, who have never in any way sanctioned or adopted it.

The fact, that the injury caused by fire to the property insured had been repaired by the owner of the right of redemption, before the commencement of this action, is wholly immaterial. The plaintiffs had an insurable interest in the property; the lefendants agreed to insure it against a loss by fire; and a loss

has occurred. The contingency contemplated by the contract has therefore arisen, and the defendants are bound to pay the amount of the damage. It is wholly immaterial to them, and constitutes no valid defence to this suit, that the property has been since repaired. *King* v. *State Mutual Fire Ins. Co.* 7 Cush. 4, 7.                *Judgment for the plaintiffs.*