PASQUALE SAVARESE et al., Appellants, *v.* OHIO FARMERS INSURANCE COMPANY OF LE ROY, OHIO, et al., Respondents.

46

(Argued June 7, 1932; decided October 4, 1932.)

*Samuel D. Cohen* for appellants. The defendant successor in interest of the contractor has no interest in or claim to the proceeds of the fire insurance policy where the policy contained the standard mortgagee clause making the loss payable to mortgagees. (*Lewis* v. *Guardian Fire & Life Assur. Co.*, 181 N. Y. 392; *Winne* v. *Niagara Fire Ins. Co.*, 91 N. Y. 187; *Cone* v. *Niagara Fire Ins. Co.*, 60 N. Y. 619; *Foster* v. *Equitable M. F. Ins. Co.*, 68 Mass. 216; *King* v. *State Mut. Fire Ins. Co.*, 61 Mass. 1; *Eddy* v. *London Assur. Corp.*, 143 N. Y. 311; *Brownell* v. *Board of Education*, 239 N. Y. 369; *Royal Ins. Co.* v. *Stinson*, 103 U. S. 25; *Excelsior Fire Ins. Co.* v. *Royal Ins. Co.*, 55 N. Y. 343; *Uhlfelder* v.

*Palatine Ins. Co.*, 111 App. Div. 57; *De Wolf* v. *Capital City Ins. Co.*, 16 Hun, 116; *Evangelical Lutheran Church* v. *Sahlen*, 254 N. Y. 161; *Hedges* v. *Dixon County*, 150 U. S. 182; *Weinberg & Holman, Inc.*, v. *Providence Washington Ins. Co.*, 254 N. Y. 387; *Graf* v. *Hope Building Corp.*, 254 N. Y. 1; *Hastings* v. *Westchester Fire Ins. Co.*, 73 N. Y. 141.) The standard mortgagee clause contained in the insurance policy created an independent contract of insurance for the separate benefit of the plaintiffs, the mortgagees named in the said mortgagee clause. (*Eddy* v. *London Assur. Corp.*, 143 N. Y. 311; *McDowell* v. *St. Paul F. & M. Ins. Co.*, 207 N. Y. 482; *Lewis* v. *Guardian Fire & Life Assur. Co.*, 181 N. Y. 392; *Goldstein* v. *Nat. Liberty Ins. Co.*, 256 N. Y. 26; *Heilbrunn* v. *German Alliance Ins. Co.*, 140 App. Div. 557; 202 N. Y. 610; *Hastings* v. *Westchester Fire Ins. Co.*, 73 N. Y. 141; *Reed* v. *Firemen's Ins. Co.*, 81 N. J. L. 523; *Syndicate Ins. Co.* v. *Bohn*, 65 Fed. Rep. 165; *Sutterlein* v. *Northern Ins. Co.*, 251 N. Y. 72; *Hardy* v. *Lancashire Ins. Co.*, 166 Mass. 210; *Dewitt* v. *Agricultural Ins. Co.*, 157 N. Y. 353; *Springfield F. & M. Ins. Co.* v. *Allen*, 43 N. Y. 389; *Lowell Mfg. Co.* v. *Safeguard F. Ins. Co.*, 88 N. Y. 591; *Niagara Fire Ins. Co.* v. *Scammon*, 144 Ill. 490; *Traders Ins. Co.* v. *Pacaud*, 150 Ill. 245; *Home Ins. Co.* v. *Koob*, 113 Ky. 360; *Kelley* v. *Peoples Nat. Fire Ins. Co.*, 262 Ill. 158; *Meigs* v. *Ins. Co.*, 205 Penn. St. 378; *Fox* v. *Phœnix*, 52 Me. 336.)

*E. J. Dimock, Joseph Greenhill, Barent L. Visscher* and *Hazel Flagler* for Ohio Farmers Insurance Company, respondent. By the complete repair of the property the mortgagees have lost any interest in the insurance moneys. (*Matter of Moore*, 6 Daly, 541; *Binder* v. *Northern Assur. Co.*, 140 Misc. Rep. 807; *Friemansdorf* v. *Watertown Ins. Co.*, 1 Fed. Rep. 68; *Huey & Philp* v. *Ewell*, 22 Tex. Civ. App. 638; *Kernochan* v. *New York Bowery Fire Ins. Co.*, 17 N. Y. 428.) If the mortgagees can recover under the

policy the amount recoverable is limited by the eighty per cent co-insurance provisions of the New York standard average clause. (*Hartwig* v. *American Ins. Co.*, 169 App. Div. 60; *Young Men's Lyceum* v. *National Ben Franklin Fire Ins. Co.*, 177 App. Div. 351; *Pennsylvania Co. for Insurance* v. *Aachen & Munich Fire Ins. Co.*, 257 Fed. Rep. 189; *Kernochan* v. *New York Bowery Fire Ins. Co.*, 17 N. Y. 428; *Aldrich* v. *Great American Ins. Co.*, 195 App. Div. 174; *Durham* v. *Stuyvesant Ins. Co.*, 196 App. Div. 924; *Quinn* v. *Fire Assn. of Philadelphia*, 180 Mass. 560.)

*Alan L. Dingle* for Max Markowitz, respondent. Where fire insurance is taken out by a mortgagor for the benefit of the mortgagee and a policy issued by an insurance company naming the mortgagor as the insured, and containing a mortgagee clause, with loss, if any, payable to the mortgagee as interest may appear, unless the mortgagee suffers an actual loss by reason of the fire, he is not entitled to recover the insurance money. The provision that no act of the mortgagor shall invalidate the policy as to the mortgagee is not in issue. (*Grosvenor* v. *Atlantic Fire Ins. Co.*, 17 N. Y. 391.) No loss or damage by fire has been sustained by the plaintiffs as mortgagees. (*Matter of Moore*, 6 Daly, 541.) Section 254, subdivision 4, of the Real Property Law does not contemplate a case where restoration is made by the mortgagor prior to payment of loss. (*Barile* v. *Wright*, 256 N. Y. 1; *Binder* v. *Northern Assur. Co.*, 140 Misc. Rep. 807.) The insurance contract, while a personal contract, is one of indemnity only. (*Kernochan* v. *New York Bowery Fire Ins. Co.*, 17 N. Y. 428; *Larner* v. *Commercial Union Assur. Co.*, 127 Misc. Rep. 1; *Huey & Philp* v. *Ewell*, 22 Tex. Civ. App. 638; *Brownell* v. *Board of Education*, 239 N. Y. 369.)

*Walter Gordon Merritt* and *Donald Knox Miller* for National Board of Fire Underwriters, *amicus curiæ.*

Under the standard mortgagee clause, the mortgagee may not recover for a partial fire loss after the property has been fully restored by the owner. ( *King* v. *State Mut. Fire Ins. Co.*, 61 Mass. 1; *Cone* v. *Niagara Fire Ins. Co.*, 60 N. Y. 619; *Matter of Moore*, 6 Daly, 541; *Huey & Philp* v. *Ewell*, 22 Tex. Civ. App. 638; *Friemansdorf* v. *Watertown Ins. Co.*, 1 Fed. Rep. 68.) Where a mortgagee is entitled to recover under the standard mortgagee clause, the recovery is limited by the eighty per cent co-insurance clause. (*Hartwig* v. *American Ins. Co.*, 169 App. Div. 60; *Young Men's Lyceum* v. *National Ins. Co.*, 177 App. Div. 351; *Pennsylvania Co.* v. *Aachen & Munich Fire Ins. Co.*, 257 Fed. Rep. 189; *Eddy* v. *London Assur. Corp.*, 143 N. Y. 311; *McDowell* v. *St. Paul F. & M. Ins. Co.*, 207 N. Y. 482; *Goldstein* v. *Nat. Liberty Ins. Co.*, 256 N. Y. 26.)

CRANE, J. Does the repair of the premises by the owner after a fire prevent the mortgagee from recovering the insurance payable to him?

On the 6th day of June, 1927, the defendant Ohio Farmers Insurance Company of Le Roy, Ohio, issued its policy of insurance whereby it insured Loretta Realty and Finance Corporation for the term of three years from the 26th day of May, 1927, to the 26th day of May, 1930, against all direct loss or damage by fire to the extent of $7,500 on the brick building No. 16 West One Hundred and Nineteenth street, New York city. The property was thereafter conveyed to Leopold Kirven, the defendant, and the change of ownership duly noted on the policy. Within the period covered by the insurance, and on the 28th day of June, 1929, a fire occurred, causing damage to the extent of $4,230.

At the time of the issuance of said policy and at the time of the fire, the plaintiffs, Pasquale Savarese and Giacomo Savarese, were the owners of a bond secured

by a mortgage upon said premises for $7,500, upon which there was due at the time of the loss $6,500, with interest from April 1, 1929. The mortgage provided that the mortgagor should keep the premises insured against loss by fire for the benefit of the mortgagee. The policy referred to contained the usual standard mortgagee clause, reading as follows: " Loss or damage, if any, under this policy, shall be payable to Pasquale Savarese & Giacomo Savarese as mortgagee, as interest may appear, and this insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property," etc.

The defendants Markowitz and Grey, as contractors with the owner, repaired the premises, so that by the 6th day of September, 1929, the property was restored to the condition in which it existed before the fire. As compensation for their work, the owner transferred to Markowitz and Grey his interest in the fire insurance policy, and the defendant insurance company stands ready to pay them the sum of $1,178.64, by applying, in calculation, the *pro rata* provisions of the policy. Judgment for this amount has been awarded to these contractor-defendants, and they have not appealed from the amount adjudged to be due. The plaintiffs, mortgagees, have appealed, claiming the full benefit of the policy of insurance and the recovery of the full amount of the loss, $4,230, unimpaired by any act of the owner in making repairs and restoring the property to its previous good condition.

The Appellate Division has taken the position, with some force of reasoning, and with some authority to support it, that the mortgagees sustained no damage, because when this action was commenced the security for their mortgage was the same building in the same state of repair as at the time the mortgage was taken. At first blush this conclusion seems quite plausible, but upon further analysis must yield to other considerations.

Under the mortgagee clause the policy issued by the defendant insured the mortgagees' interest as fully and to the same extent as if they had taken out a policy directly with the insurance company. In *Eddy* v. *London Assurance Corp.* (143 N. Y. 311, 322), this court said: "The effect of the mortgagee clause hereinbefore set forth is to make an entirely separate insurance of the mortgagee's interest, and he takes the same benefit from his insurance as if he had received a separate policy from the company, free from the conditions imposed upon the owners."

Quoting from *Hastings* v. *Westchester Fire Ins. Co.* (73 N. Y. 141), we recognized this rule again in *Goldstein* v. *National Liberty Ins. Co.* (256 N. Y. 26, 32), and said: "It [the mortgagee clause] was an independent agreement partaking in no sense of the character of an assignment of a policy of insurance, but one in which the mortgagees were recognized, as a separate party, having distinct rights, and entitled to receive the full amount of insurance money, without any regard whatever to the owner of the property."

And in *Heilbrunn* v. *German Alliance Ins. Co.* (140 App. Div. 557, 559; affd., 202 N. Y. 610) the court said: "It [the mortgagee clause] created a new and distinct contract which places the mortgagee upon another and a different footing from that of a mere assignee or appointee to receive the loss, and removes him beyond the control or effect of any act or neglect of the owner of the property, and renders such mortgagee a party who has a distinct interest separate from the owner, embraced in another and a separate contract. The interest of the owner and of the mortgagee are regarded as distinct subjects of insurance." (See, also, *McDowell* v. *St. Paul F. & M. Ins. Co.*, 207 N. Y. 482.)

The plaintiffs Savarese had an insurable interest in this building to the extent of $7,500. Independent of

the owner they could have taken out a policy of insurance against loss by fire directly payable to them, and separate and distinct from any policies taken or held by the owner. " Whether the subject-matter of insurance be a ship or a building or a life, or whatever else it may be, although in popular language it may be called an insurance upon the ship or building or life, or some other thing, yet it is strictly an agreement with some person interested in the preservation of the subject-matter, to pay him a sum which shall amount to an indemnity, or a certain sum agreed upon as an indemnity, in case his interest in the subject-matter shall suffer diminution of value, from certain specified causes, or in certain specified contingencies." (1 May on Insurance [4th ed.], § 6.)

Thus it has been held that recovery may be had by the mortgagee on his insurance policy although his security under the mortgage is perfectly good and valid. ( *Kernochan* v. *New York Bowery Fire Ins. Co.*, 17 N. Y. 428, 435.) The court there said: " The loss against which the plaintiff [mortgagee] is insured, is, by the very language of the contract, ' to the property insured; ' the destruction in whole or in part of the value of the property by the total or partial burning of the property. In case of such loss it is stated that it is ' to be paid within sixty days after due notice and proof thereof by the insured,' in conformity to the policy. Whether the loss, by diminishing the mortgage security, endangers the collection of the debt, or the security remains ample, is not by the contract made of any importance; in either case it is insured against and the amount of it is to be paid."

A mortgagee, therefore, who has insured his interest at his own expense, with no agreement or understanding with the mortgagor, is not required to exhaust his remedy upon the mortgage before enforcing his policy; and he can maintain an action thereon, although the property undestroyed is equal in value to the amount of the

mortgage debt. (*Excelsior Fire Ins. Co.* v. *Royal Ins. Co.*, 55 N. Y. 343.)

From these authorities we must conclude that whether the mortgagee takes out his own insurance, or whether he is insured by the mortgagor, under the usual mortgagee clause in the insurance policy, his right to recover in case of a fire is not dependent upon the sufficiency or insufficiency of the mortgage security after the fire.

May on Insurance (4th ed.), volume 2, section 424, says: " That after the loss the mortgagor replaces the property in as good condition as it was before, or the mortgagee, by selling other securities which he holds, reduces his debt, however it may affect the equities between him and the mortgagor, does not affect the terms of the contract between the mortgagee and the insurers. The contingency having arrived upon which the loss was payable, it must be paid according to the status of the interest at the time when the contingency happened; nor can the insurers require the mortgagee first to exhaust his remedy against the mortgagor before calling upon them for indemnity."

When we further analyze the terms of the policy and the situation of the mortgagee, reason also points to the conclusion that when a fire occurs the insurance company must pay the loss to the mortgagee in accordance with its contract with him. The mortgagor benefits by such payment as the insurance money reduces the amount of the mortgage debt. (*Waring* v. *Loder*, 53 N. Y. 581.) The value taken out of the property by the fire is taken off the mortgage by the payment of the insurance money, and the parties remain in the same relative position after as before the fire.

The policy gives to the insurance company certain options which are as binding upon the mortgagee as upon the mortgagor. One of them relates to repairs and reads as follows: " It shall be optional with this Company to take all, or any part, of the articles at the

agreed or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within thirty days after the receipt of the proof of loss herein required; but there can be no abandonment to this Company of any property.

" The amount of loss or damage for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss or damage is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided."

The company did not exercise this option and made no election to repair. The loss, as ascertained, $4,230, was, therefore, payable, according to the terms of the policy, to the mortgagee, sixty days after proof of loss and ascertainment of damage. This is the contract which the company has made and for which it has received a premium. The act of the owner in making repairs was not for and in behalf of the company or as its agent. He contracted for and undertook the work without the consent of the company and without the knowledge or consent of the mortgagee. The time of the fire and of the loss established the rights of the parties, and in the absence of an election by the company to repair, the amount of the loss payable to the mortgagee became fixed as of that time. No act or neglect of the owner could invalidate or impair the mortgagees' rights under their separate policy of insurance as thus vested at the time the loss occurred.

If it be that the mortgagor can wipe out the benefits to the mortgagee under a policy by repairing the premises without the knowledge or against the consent of the mortgagee, how long can the owner take in deciding to make repairs? The policy places a time limit upon all the steps to be pursued after the fire, and even states that

the repairs, if the company makes them, must be undertaken within a reasonable time. Under the ruling below no such limit is placed upon the owner, for if he restores the property to its previous condition any time before action brought or tried, the mortgagee has sustained no loss. In the meantime the property may remain in its destroyed condition, with loss of income to the owner with which he might pay taxes and interest on prior incumbrances. Must the mortgagee litigate the extent and sufficiency of the repairs, or, if partially repaired, is his insurance to be reduced in proportion? We do not think that the insurance contract can thus be modified by the act of a third party to the material disadvantage of the mortgagee. Section 254 of the Real Property Law (Cons. Laws, ch. 50), subdivision 4, says that the mortgagee at his option may apply the insurance toward the payment of the mortgage or (at his election) " the same may be paid over either wholly or in part to the mortgagor * * * for the repair of said buildings. * * * And if the mortgagee receive and retain insurance money for damage by fire to said premises, the lien of the mortgage shall be affected only by a reduction of the amount of said lien by the amount of such insurance money received and retained by said mortgagee." This choice given to the mortgagee to apply the insurance money either to his mortgage or to the repairs excludes a like choice in the owner-mortgagor without the mortgagee's consent. Such a right is single by nature; it cannot exist in both the mortgagor and the mortgagee, otherwise the former might decide for repairs and the other for payment, and nothing would result. No; the choice is with the mortgagee alone and in this case he asks for payment of the insurance money and does not consent that it be applied to repairs.

" The general policy of the courts in passing upon questions of insurance law has been not to allow the doctrine of indemnity to obtrude itself inconveniently,

provided the contract of insurance is free from suspicion of being a wager at the time of its inception." (Richards on Insurance [2d ed.], p. 176.)

The authorities have not been very clear or decisive upon this point, as the question apparently has seldom arisen. The earliest case cited, and frequently quoted, is *Matter of Moore*, Court of Common Pleas of New York City, decided in 1876 (6 Daly, 541). It was there said: " The bank [mortgagee] could not recover from the defendants, because the building has been restored by the mortgagee [meaning mortgagor], for the agreement is one of indemnity, and the bank has sustained no loss or damage." This sentence has been taken into digest and textbook without any consideration of its application. The mortgagee bank had relinquished all interest in the policy and had taken out other insurance to protect its security. The point involved was the right, therefore, of the bank, mortgagee, to consent to a cancellation of the first policy which it had relinquished. It appears from the statement of facts that the bank, mortgagee, made no claim upon the policy in suit, declaring in a written instrument that the security of its lien was fully protected by the repairs made on the property, and consenting that the amount be paid to the owner. Surely this case should not be taken as an authority for the proposition that the mortgagee cannot recover when repairs have been made to the property. No such question was presented.

*Friemansdorf* v. *Watertown Ins. Co.* (1 Fed. Rep. 68), decided by the Circuit Court in 1879, is based upon rulings as to the rights of mortgagees not now recognized by New York State. *Binder* v. *Northern Assurance Co., Ltd.*, Appellate Term, First Department (140 Misc. Rep. 807), while citing *Matter of Moore*, fails to apply it, saying that the property was not fully repaired. On the other hand, we have *Foster* v. *Equitable Mutual Fire Ins. Co.* (68 Mass. 216) for the view we have here taken.

The court decided: " The fact, that the injury caused by fire to the property insured had been repaired by the owner of the right of redemption, before the commencement of this action, is wholly immaterial. The plaintiffs had an insurable interest in the property; the defendants agreed to insure it against a loss by fire; and a loss has occurred. The contingency contemplated by the contract has therefore arisen, and the defendants are bound to pay the amount of the damage. It is wholly immaterial to them, and constitutes no valid defence to this suit, that the property has been since repaired."

The defendant, therefore, being liable to the mortgagee on the policy, how much is it obliged to pay? The plaintiffs claim the full amount of the fire damage, $4,230, but the policy does not obligate the insurance company to pay the full amount of the loss. The contract by the New York standard average clause provides: " This Company shall not be liable for a greater proportion of any loss or damage to the property described herein than the sum hereby insured bears to eighty per cent (80%) of the actual cash value of said property at the time such loss shall happen." This is the agreement — no more, no less. Had the building been free and clear, the owner could recover no larger amount, and the terms are not changed because the loss is made first payable to a mortgagee. The co-insurance clause (so called) is not a warranty or a condition, but a statement of the amount to be paid in case of fire either to the owner or the mortgagee. The existence of the mortgage does not extend the liability. (*Hartwig* v. *American Ins. Co.*, 169 App. Div. 60; *Pennsylvania Co. for Insurance* v. *Aachen & Munich Fire Ins. Co.*, 257 Fed. Rep. 189.)

The last phrase of the standard average clause, reading, " nor for more than the proportion which this policy bears to the total insurance thereon," has been held by this court not to be binding upon mortgagees for the reason that the total amount of insurance on a building

depends upon the will and act of the owner, and that by the very terms of the standard mortgagee clause the insurance payable to the mortgagee " shall not be invalidated by any act or neglect of the mortgagor or owner." (*Eddy* v. *London Assurance Corp.*, 143 N. Y. 311; *Hastings* v. *Westchester Fire Ins. Co.*, 73 N. Y. 141.) See same principle, *Heilbrunn* v. *German Alliance Ins. Co.* (140 App. Div. 557); *Goldstein* v. *National Liberty Ins. Co.* (256 N. Y. 26). No act or neglect of the owner, however, can vary the percentage between the sum insured for the benefit of the mortgagee and the actual cash value of the property. The mortgagee has a right to insure his own mortgage interest and keep it insured at the expense of the owner. The amount for which he insures or is insured and the actual cash value of the building are beyond impairment or reduction by any act of the mortgagor. The reasoning of the *Eddy* case and the others cited does not apply.

The value of the property at the time of the loss was $22,500, of which 80 per cent is $18,000. The proportion of $7,500, the sum insured, to $18,000, is as 5 to 12. The loss being $4,230, five-twelfths of this amount is $1,762.50, which the insurance company must pay the plaintiffs.

The judgment should be reversed and judgment directed for the plaintiffs in the sum of $1,762.50, with interest and costs in all courts.

LEHMAN, J. (dissenting). The defendant insurance company has issued a policy insuring the owner of a building against direct loss and damage by fire. The policy contains the usual mortgagee clause providing that " Loss or damage, if any, under this policy, shall be payable to Pasquale Savarese and Giacomo Savarese as mortgagee, as interest may appear, and this insurance, as to the interest of the mortgagee only therein, shall not

be invalidated by any act or neglect of the mortgagor or owner of the within described property, * * *."

We have repeatedly pointed out that by virtue of such a mortgagee clause the insurance company assumes an independent obligation to pay to the " mortgagee, as interest may appear " the *loss insured against.* The mortgagee is not merely an assignee of an obligation owed to the assignor. (*Goldstein* v. *National Liberty Ins. Co.,* 256 N. Y. 26.) None the less, the only loss which the insurance company has agreed to pay to the mortgagee is loss and damage " under this policy;" *i. e.,* loss or damage by fire to the insured property. The independent obligation to the mortgagor is to pay that loss and no other, and that obligation, too, is subject to all the terms and conditions of the policy of insurance except in so far as such terms and conditions are rendered inoperative by the provisions of the mortgagee clause that the insurance shall not be invalidated by any act or neglect of the mortgagor or owner of the property.

The building, covered by the policy, together with the land on which it stands, constituted security for the payment of the plaintiffs' mortgage. Thus, as Judge CRANE points out, the mortgagees had an insurable interest in the building, and the insurance company might agree either directly with them or, as in this case, with the owner in their behalf, that loss or damage to the property should be payable to the mortgagor or mortgagees, as interest may appear. A fire occurred and caused damage to the mortgaged premises. The plaintiffs' security was thereby diminished. Undoubtedly at that time the plaintiffs might have insisted upon the payment to them of the amount by which the value of the property, which was subject to the lien of their mortgage, was diminished, or upon the restoration of the damage done to the property. (See Real Prop. Law, § 254.) That is true alike where the property, after damage, still furnished ample security for the payment of the mortgage

debt, and where the loss endangered the security. The mortgage when given was a lien on the property in undamaged condition. The policy, including the mortgagee clause, was intended as assurance against loss or damage to the property and thus to furnish collateral security for the payment of the debt. (*Kernochan* v. *New York Bowery Fire Ins. Co.*, 17 N. Y. 428.) It was intended to protect the mortgagees' interest in the property, as well as the mortgagor's, and loss was payable, in accordance to its terms, to the mortgagees *as their interest might appear*. The problem remains whether after repairs were made and all direct damage to the plaintiffs' interest as mortgagees in the property fully made good, the loss was payable to the owner who had made good the damage to the plaintiffs' interest or to the plaintiffs. The answer to that question depends solely upon the construction of the policy.

In arriving at the proper construction, the policy should be read as a whole, in the light of the purpose for which it was given. The policy contains provisions that it shall be optional with the insurance company to repair or rebuild the property damaged or destroyed " on giving notice of its intention so to do within thirty days after the receipt of the proof of loss." The insurance company did not exercise that option. If it had done so, then its obligations under the contract would have been met. It would not have been under any further obligation to pay any " loss or damage " to any person, either owner or mortgagee. That is the agreement which the insurance company made, and it is quite immaterial whether such agreement was made with the mortgagees or with the owner for his benefit. In either event, the stipulation. would be binding. Though here the insurance company did not exercise that option, yet this clause in the agreement furnishes some indication that the purpose of the policy and the provision therein contained making the loss payable to the mortgagees as interest appears, was

to protect the mortgagees' interest in the property by payment to them of the damage to the property only if such damage was not repaired.

It is said that no such option is given by the terms of the policy to the mortgagor, and that none should be read into the policy by implication. That is true, but may not affect the question under consideration. If the insurance company failed to avail itself of the option to rebuild and repair, the owner's right to do so remained, and was unimpaired by any terms of mortgage or policy. If the owner restored the property to its original condition, he would in that way protect the mortgagees' interest against all direct loss or damage by fire, for which the policy furnished insurance to both mortgagor and mortgagees " as interest may appear." If, under the terms of the policy, the amount of such loss or damage had been payable immediately upon the occurrence, if at that time the plaintiffs' cause of action was complete, then there could be no doubt that such cause of action could not be defeated in whole or in part by any act of the owner or other stranger to the cause of action. (*Foster* v. *Equitable Mut. Fire Ins. Co.*, 68 Mass. 216.) No cause of action, however, arose at the time when the damage was caused. First there must be proof of loss, then the insurer had thirty days in which to determine whether it would exercise its option to repair. There must be compliance with all the conditions precedent to a right to demand payment before the insurance company could, even, be called upon to determine whether the plaintiffs had *then* such interest as mortgagees to entitle them to payment. In this case, even before the time had expired during which the company might exercise its option to repair, the loss or damage was fully repaired. The owner would be in a different position if he had delayed completion of the repairs beyond the time when a cause of action in favor of the mortgagees against the insurer was complete. The court must now decide whether at the

time the insurer was called upon to determine to whom payment under the policy should be made, an interest in the mortgagees appeared which entitled them to such payment.

We have said in an early case: " The undertaking is that the property shall not suffer loss by fire; that is, in effect, that its capacity to pay the mortgage debt shall not be diminished. When an appreciable loss has occurred to the property from fire, its capacity to pay the mortgage debt has been affected; it is not so well able to pay the debt which is upon it. The mortgage interest, the insurable interest, is lessened in value, and the mortgagee, the insuree, is affected and may call upon the insurer to make him as good again as he was when he effected his insurance." (*Excelsior Fire Ins. Co.* v. *Royal Ins. Co.*, 55 N. Y. 343, 359.) When the plaintiffs in this case called upon the insurer to make them as good as when the insurance was effected, the insurer answered that by the act of the mortgagor the plaintiffs were, already, made as good as when the insurance was effected and that consequently indemnity was due to the mortgagor and not to the mortgagees.

Policies of fire insurance have always been construed as intended to provide only indemnity for loss to an insurable interest. True, the loss insured against and the insurable interest are not always exactly co-extensive. That may be the case where the insurable interest is other than full ownership in the insured property. Nevertheless, where the language permits, policies of fire insurance have always been so construed as to exclude, so far as possible, any benefit to the insured beyond indemnity for loss. Indeed, to the extent that a policy admits of accidental profit by the insured from a fire, it ceases to be a contract of insurance and becomes a wagering contract.

Insurance of the interest of a mortgagee against loss by fire may be obtained in three forms: *First*, by a policy which is intended solely as insurance for the interest of

the mortgagee and where benefit is payable to the mortgagee and no other person. *Second,* by assignment to the mortgagee of a policy insuring the owner. *Third,* by a policy which, as in this case, is intended as insurance to both mortgagor and mortgagee and provides that the loss shall be payable to the mortgagee as interest may appear. The rights of the mortgagor are often dependent upon the form in which insurance is provided, and in considering the decisions, such distinctions must be kept in mind, but it is significant that in no case in this State has the insured been permitted under any form of contract of insurance to transmute a loss by fire into a profit. Where only the mortgagee's interest is insured, and loss or damage payable to the mortgagee and no other person, the mortgagor is a stranger to the insurance contract and entitled to no benefit thereunder. In such case payment to the mortgagee does not reduce the mortgage debt, but in this jurisdiction the insurer upon payment of loss becomes subrogated to an equivalent part of the mortgage debt. (*Foster* v. *Van Reed,* 70 N. Y. 19; but cf. *King* v. *State Mut. Fire Ins. Co.,* 61 Mass. 1.) Where the policy insured the interest both of mortgagor and mortgagee, but loss or damage is payable to the mortgagee as interest appears, payment to the mortgagee does reduce the mortgage debt (*Waring* v. *Loder,* 53 N. Y. 581), and thus indirectly, it is said, indemnify the mortgagor as well as mortgagee.

Where at the time the insurance moneys become payable, the mortgagee to whom the loss is payable still has an interest in the mortgaged property, and the damage to his interest has not been made good, payment of the loss to the mortgagee is in accordance with both the letter and the purpose of the insurance policy. It cannot be said that in such case the mortgagee has derived a profit from payment of the insurance moneys, for in no event could the mortgagee obtain more than the amount of the debt; nor can it be said that the policy

did not provide indemnity as intended for all interests insured when the mortgagor obtains the benefit of the payment to the mortgagor by reduction in the mortgage debt. In effect, the mortgagor in procuring a policy in that form has provided that insurance upon the mortgaged property shall be applied upon the mortgage debt whenever the mortgagee's security has been diminished by fire. It would, nevertheless, be unreasonable to hold that the language should be so construed that the mortgagor may not at his own expense repair the damage before loss is payable under the policy, and obtain indemnity under the policy, since at that time damage to the property has been restored, and the interest of the mortgagee has been made whole. Such construction would at times, as in this case, produce results contrary to the expressed purpose of the policy to have the insurance moneys paid as interest may appear.

The provision usually made in mortgages that the mortgagor shall keep the mortgaged premises insured is of particular importance whenever there is doubt whether the land without improvements would form adequate security for the mortgage. Here there was a mortgage prior in lien to the plaintiffs' mortgage upon the same property. The prior mortgage was foreclosed after the repairs were completed. There was a deficiency upon the sale held under the judgment of foreclosure, in spite of the fact that the property was then in the same condition as before the fire. If the prior mortgage contained the usual insurance clause, then under the construction urged by the plaintiffs the mortgagee was entitled to receive payment from some insurance company of the amount by which the mortgaged property was damaged by fire, and thus it would have profited to that extent by the fire. Similarly the plaintiffs would profit by the fire if in spite of the repairs, and the fact that thereafter their insurable interest in the property had been terminated by foreclosure of the prior mortgage the plaintiffs

are entitled to payment of the loss insured against, and only the owner, who has repaired the loss at his own expense, would receive no indemnity under the policies. Thus, double payment could be required of the insurance companies for a single loss, and that payment would be made to holders of interests which at the time of payment had been made good by the holder of another interest who obtains no indemnity for the loss.

Here the result is due, perhaps, to unexpected and unusual diminution in the value of the mortgaged property caused by economic conditions. Even under other circumstances, the result of the construction urged by the appellants would still present grave practical difficulties which might defeat the clear intent of the parties that the policies should constitute protection of all interests in the property and provide indemnity for any interest injured. By the destruction or damage to the property, the owner of the equity is deprived of anticipated returns from the property until it is rebuilt or restored. If the owner uses the moneys payable under the insurance policies for the restoration of the property, then all parties are protected and obtain indemnity for the direct loss or damage caused by the fire. If he cannot apply the insurance moneys to that purpose he may be unable to rebuild, and then reduction of the mortgage debt by payment to the mortgagees of the amount of the damages caused by fire would not fully indemnify him. A careful business man would, therefore, be compelled to insure his own interest in the property independently and in addition furnish insurance to each mortgagee. Thus the mortgagor, to obtain complete protection for himself and for others interested, would be burdened with the expense of carrying multiple insurance, and if loss occurs the insurance companies would be compelled to pay multiple indemnity. Thus in effect each policy of insurance would have some of the characteristics of a wager through which profit would be made by some

party through the occurrence of a fire. The language of the policy should not be so construed.

It has not been so construed in any court of this State or in other jurisdictions, though that question has never been directly presented in this court. Always, insurance policies have been construed to provide indemnity and nothing else, and where the interest of a mortgagee has been made whole by repair of damage before the insurance company is called upon to pay the loss under a contract of insurance covering the owner but payable to the mortgagee as interest appears, the mortgagee has no interest in such payment. See *Matter of Moore* (6 Daly, 541), where decision was based upon such construction even if it were true that the same decision might have been rendered on some other ground. (*Friemansdorf* v. *Watertown Ins. Co.*, 1 Fed. Rep. 68; *Huey & Philp* v. *Ewell*, 22 Tex. Civ. App. 638; *Mathewson* v. *Western Assur. Co.*, 10 Low. Canada, 8.)

. Even the one case relied upon by the appellants to sustain their contentions (*Foster* v. *Equitable Mut. Fire Ins. Co.*, 68 Mass. 216) holds nothing to the contrary. In that case the mortgagees insured their own interest against loss by fire. Under the terms of the policy the loss was payable only to them and not to the owners or to the mortgagees as interest appears. When the contingency contemplated by the contract had arisen, the insurance company was bound to pay the amount of the damage, and since it had agreed to pay that amount to the mortgagees, the insurance company could, of course, not escape performance of its own obligation by any claim that the damage to the mortgaged property had been repaired by a stranger to the insurance policy. There is nothing in the opinion which even suggests that the decision would not have been different if there had been question under the terms of the policy as to which of two parties protected by the same obligation was entitled to payment of the loss. (Cf. *Gordon* v. *Ware Sav. Bank*, 115 Mass. 588.)

If these conclusions are correct, then, of course, the New York standard average clause, like all other clauses in the insurance policy, is applicable. In my opinion it would be applicable, even if the loss was payable to the mortgagees, at least to the extent that the insurer's liability does not include " a greater proportion of any loss or damage to the property described herein than the sum hereby insured bears to eighty per cent of the actual cash value of said property at the time such loss shall happen."

For these reasons the judgment of the Appellate Division should be affirmed.

HUBBS, J. (dissenting). Often protection against fire hazards is as essential to a mortgagee's security as the bond and mortgage which the mortgagee holds. That protection is secured in different ways as stated in the opinions of my associates. A common way is by the attachment of a New York standard mortgagee clause to a policy as was done in this case. The effect of attaching a standard mortgagee clause to a policy is to make an independent contract between the insurance company and the mortgagee. In fact, there are two contracts embodied in the policy, one between the company and the mortgagor owner and the other between the company and mortgagee. (*Hastings* v. *Westchester Fire Ins. Co.*, 73 N. Y. 141; *Eddy* v. *London Assur. Corp.*, 143 N. Y. 311; *Hardy* v. *Lancashire Ins. Co.*, 166 Mass. 210; *Goldstein* v. *National Liberty Ins. Co.*, 256 N. Y. 26.) Neither the owner nor the mortgagee, by act or failure to act, can nullify or decrease the amount of protection offered to the other except as provided by the terms of the policy and the mortgagee clause. Notice of cancellation given by the company to the owner which is sufficient to cancel the policy as to the owner, will not affect the interest of the mortgagee or abrogate or reduce the liability of the company to the mortgagee in case of loss or damage.

The converse is true. Notice of cancellation given to

the mortgagee will not have the effect of canceling the policy as against the owner mortgagor.

The owner cannot enter into an agreement of settlement with the company after a loss and bind the mortgagee by such agreement.

Under a New York standard mortgagee clause, alienation of the property by the mortgagor will not void the policy as to a mortgagee.

In fact, none of the forfeiture conditions contained in a policy, the violation of which voids the policy as to the owner mortgagor, has that effect as against a mortgagee under a New York standard mortgagee clause, except those which are restated in the mortgagee clause. The mortgagee clause provides: " And this insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property."

The eighty per cent co-insurance clause attached to the policy provides that the company shall not be liable for a greater proportion of any loss or damage than the sum insured bears to eighty per cent of the cash value of the property at the time such loss shall happen.

It is true that the clause limits the liability of the company in case of damage from the inception of the policy and remains in force so long as the obligation remains in existence, only, however, I think as against the owner mortgagor.

If there is conflict between the provisions of the mortgagee clause quoted and the provisions of the eighty per cent co-insurance clause, that conflict must be resolved in favor of the mortgagee under well-settled principles.

True it is that the exact question here involved has not been passed upon by this court. It has, however, I think charted the course which we should follow in deciding the question. (*Hastings* v. *Westchester Fire Ins. Co.*, *supra; Eddy* v. *London Assur. Corp.*, *supra*.)

It should be borne in mind that the amount of insurance

required to be carried under the eighty per cent co-insurance clause is a variable amount and that the obligation to carry a sufficient amount rests upon the owner, not upon the mortgagee.

The clause provides that the standard for determining the basis for the operation of the eighty per cent clause shall be " the actual cash value of said property at the time such loss shall happen." At the time when the insurance is written, it may represent eighty per cent of the actual cash value, but at the time of a loss it may fall far short of such percentage of cash value for various reasons. Alterations and repairs may have been made by the owner without the knowledge of the mortgagee; and many other illustrations will be readily thought of which may radically increase the value of the property. Such increased value under respondents' contention would impair the mortgagee's security without his knowledge or consent. How can it be successfully contended, therefore, that the actual cash value of the property is beyond impairment by the act of the mortgagor, or that no act or neglect of the owner can vary the percentage between the sum insured for the benefit of the mortgagee and the actual cash value of the property?

Assume that a person owning a building of the value of $10,000, places a mortgage thereon for $4,000 and takes out two policies of insurance, each for $4,000. One policy for $4,000 is delivered to the mortgagee and the other retained by the mortgagor. Each policy contains an eighty per cent co-insurance clause and a New York standard mortgagee clause and are concurrent in form. The two policies amounting to $8,000 constitute eighty per cent of the value of the property insured and fully comply with the eighty per cent co-insurance clause. For some reason the mortgagor permits the $4,000 policy in his possession to lapse. Thereafter the property is damaged by fire to the extent of $4,000. Under the contention of the defendant, the mortgagee, without his knowledge or consent has become a co-insurer for fifty

per cent of the damage or his security has been reduced fifty per cent by the failure of the mortgagor to keep in force insurance for $8,000. " Any act or neglect of the mortgagor or owner," within the meaning of the mortgagee clause under the contention of the defendant, has invalidated the mortgagee's security to the extent of fifty per cent. The clause provides, however, that " any act or neglect of the mortgagor or owner " shall not invalidate the policy as against the mortgagee.

It is difficult for me to understand how the act of the owner in procuring additional insurance cannot affect the rights of the mortgagee under a New York standard mortgagee clause where the policy contains an apportionment clause as was decided in *Eddy* v. *London Assur. Corp.* (*supra*), and still that the act of the owner in failing to maintain insurance for eighty per cent of the value of the property insured can injuriously affect the rights of the mortgagee. It seems to me that the decisions in cases involving the apportionment or *pro rata* clause in principle determines the question involved in this case.

If the contract with the mortgagee is a separate contract with the insurance company, as it is conceded to be, how can a third party, the owner, nullify or diminish the rights of the mortgagee under such contract except as therein provided. A mortgagee has an insurable interest, the mortgagee clause constitutes a separate contract between the mortgagee and the insurance company, whereby the company agrees to insure that interest. When a loss occurs, the contract requires the company to pay the loss to the other party to the contract, the mortgagee, and the right of the mortgagee to recover the loss cannot be impaired by the owner's failure to carry out an agreement made with the insurance company.

The object and intent of the insurance company, the owner and the mortgagee seems clear. It was by issuing and delivering the policy to the mortgagee intended to secure the mortgagee against loss or damage in case of a fire. That intent should be given effect.

Such conclusion is strengthened by considering the provision of the policy which gives the company the right to subrogation in the event that it is compelled to pay to the mortgagee more than the owner could recover in his own right. The effect of that provision was clearly stated in the case of *Hastings* v. *Westchester Fire Ins. Co.* (*supra*); Richards on Insurance (3d ed.), section 291.

The case of *Hartwig* v. *American Ins. Co.* (169 App. Div. 60, 63) is relied upon by respondents. That case proceeds upon the principle that "Before a mortgagee has any right of recovery under such clause, he must establish the amount the insurer is liable for under its contract with the owner, and his recovery cannot in any event exceed that amount."

The law is well settled to the contrary. Under the New York standard mortgagee clause, a mortgagee may often recover, when there can be no recovery by the owner. The owner by his conduct, may afford an insurance company a complete or partial defense as against himself without affecting the right of the mortgagee to recover. That case should be disapproved and overruled.

When several mortgagees hold separate policies covering the same mortgaged property payment to the mortgagees would not pay the mortgage debt as the insurance companies would be subrogated to the rights of the several mortgages, for any amounts paid over and above the amount which the owner could have recovered if there had been no mortgages. (Richards on Insurance [3d ed.], section 291.)

The judgment should be reversed and judgment granted the plaintiffs for the sum of $4,230, with interest and costs in the Appellate Division and in this court.

POUND, Ch. J., KELLOGG and CROUCH, JJ., concur with CRANE, J.; LEHMAN, J., dissents in opinion in which O'BRIEN, J., concurs; HUBBS, J., dissents in opinion and votes for reversal and judgment in favor of plaintiffs for the full amount of the loss.

Judgment accordingly.