Dore, J.
Plaintiff, lessee of a restaurant, was insured by defendant against loss by fire on improvements of a structural *347 character. A fire occurred causing net damages of such improvements in the agreed sum of $3,954.89. Plaintiff’s landlord under the terms of the plaintiff’s lease became obligated to repair the damage and did so. In this submission of controversy between plaintiff, the insured lessee, and defendant, its insurer, under sections 546 and 548 of the Civil Practice Act, the issue is:
Does the landlord’s complete restoration of the premises after the fire prevent the insured lessee from recovering against defendant, its insurer, the amount of the fire loss?
Plaintiff contends that defendant, as plaintiff’s insurer against physical loss by fire cannot escape payment under the policy merely because a third party, plaintiff’s landlord, who did not cause the loss, has made it good. Defendant insurer, contends that the insured cannot recover under the terms of the policy because at the time the policy became payable, sixty days after proof of loss, plaintiff’s restaurant had already been fully restored by the landlord to the condition- in which it existed before the fire.
In March, 1942, in consideration of the premium paid, defendant issued a so-called “ Improvements and Betterments ” fire insurance policy insuring plaintiff from January, 1942, to January, 1945, against all direct loss and damage by fire to an amount not exceeding $20,000 on the improvements and betterments of a structural character attached to that part of the building in 8 East 49th Street, in which plaintiff’s restaurant was situated. Plaintiff, the insured had paid $18,000 for the improvements and clearly had an insurable interest when the policy was issued and when the loss and damage occurred by reason of the fire.
On December 29, 1943, while the policy was in full force, a fire occurred not from any cause excepted from the policy, and concededly without fault of either the insured or its landlord. The fire partially damaged the improvements to the extent of $3,954.89.
Thereafter, plaintiff through its broker submitted to defendant details of plaintiff’s claim of loss. By stipulation, however, plaintiff’s time to file proofs of loss was extended to January 24, 1945. On January 11, 1945, plaintiff duly filed sworn proofs of loss in accordance with the terms of the policy making claim for the above sum, the net amount of damages having been determined between the parties without prejudice. Plaintiff demanded that sum. Defendant refused to pay.
Meanwhile, the landlord pursuant to the terms of the lease had fully repaired the damages caused by the fire to the improve *348 ments out of the proceeds of the landlord’s own fire insurance policies covering the premises. The repairs were completed on July 26, 1944, and restored the improvements to the same condition in which they had existed before the fire.
On two other policies covering tools and stock, issued by defendant to plaintiff, defendant paid plaintiff a total of $4,750; but neither of these policies is here in question.
Defendant refused to pay the $3,954.89 under the improvements policy because the landlord had already restored the improvements in the premises and therefore, defendant contends, there was no loss when the policy became payable.
On first impression this contention appears plausible and even persuasive to prevent an apparent double indemnity or an apparent profit to an insured because of a fire when the insured has the benefit of two independent contracts, one with the insurance company and the other with a third party. But on further analysis and in the light of New York case law, this impression must yield to the rule laid down by controlling authorities (Foley v. Manufacturers’ Fire Ins. Co., 152 N. Y. 131; Savarese v. Ohio Farmers Ins. Co., 260 N. Y. 45; Tiemann v. Citizens’ Insurance Co., 76 App. Div. 5 [1st Dept.]; Rosenbloom v. Maryland Insurance Co., 258 App. Div. 14 [4th Dept.]).
In the Foley case (supra) the plaintiffs, owners of property, had a contract with a third person to build houses and the risk of loss pending completion was on the contractor. The owner had also insured the property. A fire occurred before completion of the construction contract. The insured owners sued on the policy. The insurance company contended that the owners had not suffered any “ loss ” because the contractor was obligated to make good the loss. The Court of Appeals held that the insured could collect the insurance although it was the contractor’s duty to rebuild. Rejecting the contention of the insurer, the Court of Appeals ruled (p. 134): “ The contention of the defendant rests upon a misconception of the insurer’s contract and as to the insurable interest of the plaintiffs in the structures. The defendant, by its contract, undertook to insure the plaintiffs against loss by fire, not exceeding .the sum specified to the ‘ described property, ’ the loss or damage to be ascertained ‘ according to the actual cash value ’ of the property at the time of the fire. The parties by this contract made the value of the property insured, within the limit, the measure of the insurer’s liability. * * * But the contract relations between the plaintiffs and the contractors is a matter in which the defendant has no concern.”
*349 Defendant attempts to distinguish that case by pointing out that there the contractor had not replaced the buildings destroyed by the fire when the policy became payable, whereas here the third party, the landlord, had completely restored the improvements. But the reasoning of the Court of Appeals was apparently not based on any such distinction, for it further said (p. 135): “ It is possible that if the defendant is compelled to pay the policy the plaintiffs may, if they insist upon their rights against the contractors, get double compensation, unless they should be adjudged to hold the fund recovered for the contractors. * * *
" The fact that improvements on land may have cost the owner nothing, or that if destroyed by fire he may compel another person to replace them without expense to him, or that he may recoup his loss by resort to a contract liability of a third person, in no way affects the liability of an insurer, in the absence of any exemption in the policy.” (Italics mine.) In the policy before us there is no such specific exemption.
In the Tiemann case (76 App. Div. 5, supra) a controversy was submitted to this court on analogous facts. The insured owner had contracted to sell the property at a certain price; before the sale a fire occurred damaging the premises, but the owner on the sale received the full amount of the contract price. This court held (p. 10): The fact that the plaintiffs’ property was damaged by a risk within the terms of the policy was at the time of the fire a direct damage to the plaintiffs which the defendant had insured. The fact that the plaintiffs had offered to sell the property at the price which they subsequently obtained, notwithstanding the impairment of its value by the fire, would not release the defendant from liability, and I cannot see that the execution of this contract- would have that effect.” The court further said that it was never held in this State that such injury to specific property insured is not a damage because the owner subsequently receives the same amount that he was willing to take or had agreed to take for the property prior to a fire.
Similarly, in the Rosenbloom case (258 App. Div. 14, supra) the owner on the sale of property was paid practically the full amount that he originally was to receive though the premises had been damaged by fire after fixing the price. On the authority of the Foley, Tiemann and Savarese cases (supra) the Fourth Department held that the owner could recover on the policy against the insurance company and that the contract between the owner and the third party was not available to the insurer as a defense to the policy.
*350 In the Savarese case (260 N. Y. 45, supra) the issue was whether repair of the premises by the mortgagor after a fire prevented a mortgagee from recovering the insurance payable to him. The Court of Appeals held that the act of the owner in making repairs was not in behalf of the insurance company or as its agent, and said (p. 54): “ The time of the fire and of the loss established the rights of the parties, and in the absence of an election by the company to repair, the amount of the loss payable to the mortgagee became fixed as of that time. No act or neglect of the owner could invalidate or impair the mortgagees’ rights under their separate policy of insurance as thus vested at the time the loss occurred. ’ ’
We think that the rule is established by the weight of authority in our courts. The English rule is otherwise (Darrell v. Tibbitts, 5 Q. B. D. 560). In that case the insured landlord had the benefit of a covenant by his tenant to make repairs. On the loss by fire insured against, the insurance company paid the landlord; thereafter the tenant repaired the premises; the insurer sued the landlord and obtained judgment recovering the amount paid. (Accord: Castellain v. Preston, 11 Q. B. D. 380.)
The only New York case defendant cites to sustain its position is Larner v. Commercial Union Assurance Co., Limited (127 Misc. 1, Supreme Court, Albany County). The case is in point, but the weight of controlling authority in this State is otherwise.
Commenting on the English cases, Richards on the Law of Insurance (4th ed., § 54, pp. 81-83) says: ‘ If an insurer after loss is a mere surety for some obligor primarily liable, this rule would seem to be indubitably sound, but other courts in this country do not seem disposed to press to such an extreme either tne doctrine of indemnity or that of subrogation when applied to the law of insurance. They seem rather inclined to look upon a contract of insurance upon property, if valid and unobjectionable when made, as an absolute promise by the insurer, subject to all the terms of the policy, to pay the damage sustained by the property as measured by its cash or market value (of course, however, not exceeding the amount of insurance), and they declare that inasmuch as premiums are estimated upon that measure of liability any other basis of indemnity is inequitable in principle besides being inconvenient in practice.”
A similar rule is applied to life policies so long as there is an insurable interest and the insured has suffered the kind of *351 loss contemplated. Thus a creditor whose debt has been paid after he obtained a policy on the life of his debtor, may still recover under the policy (Ferguson v. Mass. Mutual Life Ins. Co., 32 Hun 306, affd. 102 N. Y. 647).
The Court of Appeals, in Empire Development Co. v. Title Guarantee & Trust Co. (225 N. Y. 53, 58, 59) has said: “ There is then no fundamental objection to definition between the parties to an insurance contract of the loss which they intend to cover, so long as it is made in good faith and not as merely the cover of a wager. The courts will not interfere. Their function is limited to a construction of the contract. ’ ’
Here the stipulation of fact presents no issue whatever of fraud or bad faith or any plan to profit from a fire. Such issues referred to in defendant’s brief, are not before us. The parties agreed that the insurer would make good a “ direct loss and damage by fire ” to “ property ” to the extent of its actual cash value. The loss occurred and established the rights of the parties. This was the contract between the insured and the insurer. It was not a contract of surety that the landlord would perform his contractual obligation which was wholly independent of any relation to the insurance company.
Joyce on the Law of Insurance (Yol. 1, 2d ed., §§ 24, 24a) defines “ indemnity ” to mean: “ * * * that the party insured is entitled to be compensated for such loss as is occasioned by the perils insured against, in precise accordance with the principles and terms of the contract of insurance.
“ Nor are his damages to be diminished because he has collateral contracts or relations with third persons which relieve him wholly or partly from the loss against which the insurance company agreed to indemnify him.”
The landlord’s obligation to repair in case of fire was something plaintiff purchased with its own funds and was reflected in the amount of rent it was compelled to pay to its landlord. Such rent it might have paid for years before any loss was sustained.
Defendant relies on the subrogation clause, and urges that such clause gives the insurer the right to subrogation not only against a third person causing the loss, e.g., by tort or other wrongful act, but also against a mere contractual obligee of the insured. The subrogation clause in the policy before us provides that the insurer may require from the insured an assignment of all right of recovery against any party “ to the extent that payment therefor is made by this Company ”. Here there was neither payment nor recognition by the insurer of *352 any liability to pay under the policy. In that state" of facts it is unnecessary to determine whether the clause is as broad as defendant contends. But in Fields v. Wesiern Millers Mutual Fire Insurance Co. (290 N. Y. 209, 216) the Court of Appeals said: “ We should point out- that, in saying that there is no subrogation clause in this policy, we have not overlooked the clause which puts the insurer in a position to demand ‘ from the assured an assignment of all right of recovery against any party for loss or damage * * V Clearly that means an assignment of a claim against some third party for damaging the vehicle.” The clause in the Fields case was identical with the clause in the casé at bar.
Plaintiff concededly had an insurable interest when the policy was issued and at the time of the loss. The loss was not caused by any wrongful act of either the landlord or the insured. Defendant’s policy insured the property and not the debt due the insured from its landlord. The policy did not contain a clause specifically granting the insurer subrogation to contract rights belonging to insured. In the light of these facts and all the facts stipulated to in this regard it is difficult to see why under the subrogation clause in question, the ultimate loss should fall upon the landlord while the insurance company though accepting and retaining its premium for the precise coverage of loss that occurred, should have no obligation or liability whatever. (Cf. Richards, Law of Insurance [4th ed.], § 54.)
As between the parties to this stipulation defendant is liable to plaintiff for the fire loss in question and judgment should be directed in plaintiff’s favor in the sum of $3,954.89 with interest but without costs.
Glennon, Cohn and Peck, JJ., concur.
Judgment unanimously directed in plaintiff’s favor in the sum of $3,954.89, with interest but without costs. Settle order on notice. [See post, p. 996.]